OPINION
This appeal arises from a decision by the Common Pleas Court of Putnam County to enter summary judgment against Plaintiff-Appellants, Roy and Elizabeth Vennekotter. Finding no merit to the arguments advanced on appeal, we affirm the judgment of the trial court.
In December 1996, Roy Vennekotter applied to work at Comair, Inc., (Appellee) as a pilot instructor. After conducting an interview with Vennekotter, Larry Neal, Comair's manager of technical training, telephoned him on Christmas Eve and made a tentative offer. Neal stated that Vennekotter would have to contact a supervisor in order to be extended a formal offer of employment. In addition, Vennekotter was aware that employment was conditioned upon satisfactory completion of Comair's background check.
A Comair employee formally offered the position to Vennekotter shortly thereafter. Vennekotter then visited Comair's human resources department in order to begin the background check process and to fill out the necessary paperwork. The record indicates that at that time, Vennekotter informed Kelly Throckmorton, a Comair human resources representative, that he might encounter difficulties from his former employer, Rhue Sales, Inc., because Vennekotter had been involved in a criminal investigation against the owner.
In fact, on December 30, 1996, Throckmorton contacted Rhue Sales as part of the routine background investigation and was told that during Vennekotter's employment with the organization, he refused to comply with drug testing regulations. In addition, Throckmorton was informed that Vennekotter also falsified documents during the aforementioned federal investigation, and made several negative comments about Comair. Throckmorton promptly phoned Vennekotter the next day to allow him to respond to the allegations. Vennekotter evidently became extremely upset during the conversation, raising his voice and swearing on several occasions. At that point, Comair decided to withdraw the offer of employment. Although months later Comair received confirmation that Vennekotter did not refuse to take a mandatory drug test during his employment with Rhue Sales, the company did not renew the previous job offer.
These events prompted Vennekotter and his wife to commence the instant lawsuit. The plaintiffs' complaint named several defendants, including Comair and Rhue Sales, and set forth various causes of action. The causes of action specific to Comair were a violation of public policy; tortious infliction of emotional distress; breach of contract; and promissory estoppel. Vennekotter's wife also filed a claim for loss of consortium. The defendants answered the complaint and thereafter, all defendants filed motions for summary judgment on all claims. In an entry dated January 21, 2000, the trial court granted Comair's motion only. However, the trial court did not include in its entry the language contained in Civ.R. 54(B), stating that there is no just cause for delay. Approximately six months later, the remaining parties filed a consent judgment entry stating that they had settled the case pursuant to a confidential agreement. Upon the issuance of a final order, the Vennekotters filed this timely appeal, essentially asserting, in four separate assignments of error, that the trial court erred in granting summary judgment to Comair on all claims. We have chosen to discuss these arguments outside of their original order.
 II.
The trial court committed reversible error in granting Appellee's Motion for Summary Judgment on Appellants' claim for infliction of emotional distress as the facts support a finding of the requisite extreme and outrageous behavior on the part of Appellee.
Appellate review of a motion for summary judgment is de novo. Grinerv. Minster Bd. of Edn. (1998), 128 Ohio App.3d 425, 430, 715 N.E.2d 226,230. It is axiomatic that summary judgment is not appropriate unless it can be said that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law and, construing all evidence in favor of the opposing party, reasonable minds could conclude in favor of the moving party only. Id.; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47; Civ.R. 56(C). Accordingly, a motion for summary judgment "must be denied where competing reasonable inferences may be drawn from undisputed underlying evidence, or where the facts present are uncertain or indefinite."Griner, 128 Ohio App.3d at 430, 715 N.E.2d at 230.
The initial complaint indicates that Appellants set forth a claim for intentional or negligent infliction of emotional distress based upon the treatment that Vennekotter received after Comair was provided false information about his refusal to submit to a drug test. The following elements must be established in order to recover in an action for intentional infliction of emotional distress:
 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go `beyond all possible bounds of decency' and was such that it can be considered as `utterly intolerable in a civilized community' * * *; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that `no reasonable [person] could be expected to endure it.'
Retterer v. Whirlpool Corp. (1996), 111 Ohio App.3d 847, 855-856,677 N.E.2d 417, 422, quoting Pyle v. Pyle (1983), 11 Ohio App.3d 31, 34,463 N.E.2d 98, 103. Similarly, in order to set forth a successful claim for negligent infliction of emotional distress, the plaintiff must demonstrate, inter alia, serious emotional distress "which is both severe and debilitating." Paugh v. Hanks (1983), 6 Ohio St.3d 72, 451 N.E.2d 759, paragraph 3a. of the syllabus.
While we doubt the sufficiency of Vennekotter's proof as to each of the elements of these claims, we need only discuss the lack of evidence as to the seriousness of the alleged emotional distress. It is obvious from the record that the events surrounding his involvement with Comair have left Vennekotter upset, embarrassed, and angry. Notwithstanding, Vennekotter testified that he has not been diagnosed by a physician, psychiatrist, or psychologist and, more significantly, that he has never sought any type of treatment for any emotional disorders. There is no evidence whatsoever that this alleged distress was of such a serious nature that no reasonable person should be expected to endure it. Indeed, any emotional troubles stemming from this incident did not prevent the plaintiff from promptly seeking substitute employment, thus, illustrating that Vennekotter was not seriously affected in his ordinary functioning. Consequently, we find, as a matter of law, that the record lacks a genuine issue of material fact with respect to this essential element of tortious infliction of emotional distress. Thus, the second assignment of error is without merit and must be overruled.
 III.
The trial court committed reversible error in granting Appellee's Motion for Summary Judgment as to Appellants' claims for breach of contract and promissory estoppel as there was an employment contract formed between the parties, there was not merely a withdrawal of a promise of future employment.
In the brief submitted to this Court, the appellants concede that the employment contract, if any, was for an at-will position. Generally, if the parties have entered into an at-will employment agreement, the relationship between the employer and employee may be terminated at any time, even without cause. Wright v. Honda of Am. Mfg., Inc. (1995),73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384. However, in Mers v.Dispatch Printing Co. (1985), 19 Ohio St.3d 100, 104-105, 483 N.E.2d 150,154-155, the Supreme Court of Ohio carved out two recognized exceptions, which alleviate the harshness of this general rule. These exceptions are, "(1) the existence of implied or express contractual provisions which alter the terms of discharge; and (2) the existence of promissory estoppel where representations or promises have been made to an employee." Wright, 73 Ohio St.3d at 574, 653 N.E.2d at 384.
We first address the appellants' claim that Comair breached the at-will agreement because the record supports an implied contract for different terms of discharge. In order to decide this issue, it is necessary to review "the facts and circumstances" in relation to the employer/employee relationship. This includes "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question * * *." Wright,73 Ohio St.3d at 574, 653 N.E.2d 384, quoting Mers, 19 Ohio St.3d at 104,483 N.E.2d at 154. In addition, the Supreme Court of Ohio has stated that the trier of fact may also review such items as "information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy." Wright,73 Ohio St.3d at 575, 653 N.E.2d 384.
In this case, it is apparent that the appellants cannot point to any evidence tending to establish an implied contract for different terms of discharge. In fact, Vennekotter testified that he was fully aware that his employment was not final, since it was conditioned upon successful completion of the background check. The record does not show, nor do the appellants allege, that any Comair representative made a promise of any special job-security or extended employment. Neither do the appellants allege that any of the paperwork received by Vennekotter indicated such a promise. There is simply no evidence of an implied contract for different terms of discharge. While the appellants attempt to alter the law surrounding this issue by arguing that Comair should have kept Vennekotter as an employee for a "reasonable period of time," this is wholly inconsistent with the well-established principles of at-will employment.
With that stated, we turn to address the appellants' contention that promissory estoppel should be applied to circumvent the effects the doctrine of employment-at-will. Again, we cannot agree.
 The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.
Mers, at paragraph three of the syllabus. Furthermore, in addressing this exact issue, this Court recently observed, "[i]n the absence of a `specific promise of continued employment', a promise of future benefits or opportunities does not support a promissory estoppel exception to the employment-at-will doctrine." Clark v. Collins Bus Corp. (2000),136 Ohio App.3d 448, 452, 736 N.E.2d 970, 974 [emphasis added], citingWing v. Anchor Media, Ltd. (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus.
While the record certainly shows that Comair discussed certain opportunities and benefits with Vennekotter during the initial hiring process, there is no indication of a clear, unambiguous promise of continued employment or employment of a specific duration. As such, we find that there is no genuine issue of material fact with regard to the issue of promissory estoppel, and that the trial court did not err in granting summary judgment herein. Appellants' third assignment of error is not well taken and is therefore overruled.
 I.
The trial court committed reversible error in granting Appellee's Motion for Summary Judgment on Appellants' Public Policy Claim in that both the facts and the law support such a claim for Appellee's violations of the Pilot Records Improvement Act of 1996,49 U.S.C. §] 44936(f)(9) * * *.
In this assignment of error, Appellants rely upon49 U.S.C. § 44936(f), which is entitled Records of employment ofpilot applicants. The law generally states that "before allowing an individual to begin service as a pilot, an air carrier shall request and receive" various background information with respect to that individual.49 U.S.C. § 44936(f)(1). The statute further provides, "[a]n air carrier that maintains or requests and receives the records of an individual under paragraph (1) shall provide the individual with a reasonable opportunity to submit written comments to correct any inaccuracies contained in the records before making a final hiring decision with respect to the individual."
The term "pilot" is not specifically defined in the federal statute. Assuming that the statements contained in Vennekotter's affidavit are true, in that his employment with Comair would require him to perform duties as both a flight instructor and a pilot, we fail to see how this particular statute could possibly provide Appellants with the relief they are seeking.
We first observe the provision contained in 49 U.S.C. § 44936
(g), which states, in relevant part:
 (1) Limitation on liability — No action or proceeding may be brought by or on behalf of an individual who has applied for or is seeking a position with an air carrier as a pilot and who has signed a release from liability, as provided for under paragraph (2), against —
 (A) the air carrier requesting the records of that individual under subsection (f)(1);
* * *
 in the nature of an action for defamation, invasion of privacy, negligence, interference with contract, or otherwise, or under any Federal or State law with respect to the furnishing or use of such records in accordance with subsection (f).
 It is undisputed that Appellant signed a release from liability furnished by Comair.
We next recognize the express pre-emption provision that Congress has chosen to include in the law:
 (2) Preemption — No state or political subdivision thereof may enact, prescribe, issue, continue in effect, or enforce any law * * * that prohibits, penalizes, or imposes liability for furnishing or using records in accordance with subsection (f).
49 U.S.C. § 44936(g)(2). The only specific exception to49 U.S.C. § 44936(g)(1) and (2) states that these provisions will not apply in circumstances where a person knowingly furnishes false background information that was maintained in violation of a criminal law of the United States. 49 U.S.C. § 44936(g)(3).
The appellants attempt to evade the effects of these subsections by arguing that Comair's alleged refusal to allow Vennekotter a reasonable time to correct any inaccuracies in the background information was in contravention of the common law public policy of this State, and that such a cause of action has not been pre-empted by the federal law. We find this argument to be wholly without merit.
Assuming, arguendo, that the express pre-emption provision was not intended to encompass a common law action of this sort, the evidence, when taken as a whole and construed most strongly in favor of the appellants, demonstrates the clear lack of a genuine issue of material fact as to this particular cause of action.
In Greeley v. Miami Valley Maintenance Contractors, Inc., (1990),49 Ohio St.3d 228, 551 N.E.2d 981, the Supreme Court created another exception to the common law doctrine of employment at-will. UnderGreeley, "a discharged employee has a private cause of action sounding in tort for wrongful discharge where his or her discharge is in contravention of a `sufficiently clear public policy.'" Painter v.Graley (1994), 70 Ohio St.3d 377, 382. "The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law." Id. at 384. While courts are not limited to legislative enactments in order to perceive a "sufficiently clear public policy", they have been cautioned that this exception to the at-will employment doctrine "should be recognized only where the public policy alleged to have been violated is of equally serious import as the violation of a statute." Painter,70 Ohio St.3d at 384, citing Greeley, supra, 49 Ohio St.3d at 234, 551 N.E.2d at 987.
The finding of a public policy is only the first step in the analysis.Painter, 70 Ohio St.3d at 384. Although at the time that Painter was decided, the tort had not yet evolved to the point where more specific elements could be identified, the Supreme Court later adopted the following as the remaining elements:
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element). 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element). 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).
Collins v. Rizkana (1995), 73 Ohio St.3d 65, 69, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397-398-399.
In this case, there is no indication that Comair's conduct, which theevidence shows was motivated in part by Vennekotter's own behavior duringthe hiring process, was in violation of a clear public policy. Thus, supposing that we could even reach this issue, we would not find that a genuine issue of fact exists with respect to the common law tort of wrongful discharge.
Appellant's first assignment of error is overruled.
 IV.
The trial court committed reversible error in granting Appellee's Motion for Summary Judgment on the basis of the "release" given to Appellee as that "release", properly construed pursuant to common law contract principles, did not operate to release those claims.
Given our disposition of the previous assignments of error, we find that this final argument has been rendered moot.
Having found no error prejudicial to the Appellants herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
SHAW and BRYANT, JJ., concur.