JOURNAL ENTRY and OPINION
{¶ 1} Allan and Sharon Kanieski appeal from the trial court's summary judgment in favor of appellee Sears, Roebuck, Co. (Sears). Appellants assign the following as errors for our review:
 {¶ 2} "The trial court erred in granting Defendants-Appellees' Motion For Summary Judgment on January 3, 2002, as there was a Genuine Issue of Material Fact as to whether Plaintiff-Appellant Allan Kanieski's termination of employment was the result of age discrimination and wrongful discharge in violation of public policy by the Defendants-Appellees.
 {¶ 3} "The trial court erred in granting Defendant-Appellees' Motion For Summary Judgment on January 3, 2002, as there was a Genuine Issue of Material Fact as to whether Plaintiff-Appellant Sharon Kanieski's discharge from employment was the result of sexual discrimination and wrongful discharge in violation of public policy, and that Plaintiff-Appellant Sharon Kanieski was the victim of sexual harassment."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 5} Appellants are former Sears employees. Following 29 years of service, Sears terminated Allan's employment ostensibly in response to violations of store policies relating to the retention of loaned merchandise and the resale of returned merchandise. At the time of termination Allan was 52 years of age.
 {¶ 6} Prior to her January 20, 1996 wedding to Allan, Sharon engaged in a sexual relationship with Thomas Stewart who held various managerial positions at Sears, but never held direct authority over Sharon. Sharon claimed Stewart harassed her while she worked at the Mentor store and that she failed to secure a managerial position because she spurned his advances. Soon after her wedding to Allan, Sharon transferred from Sears's Mentor store to its Richmond Heights store due to the Mentor store manager's policy against married couples working together.
 {¶ 7} Appellants complained that Sears, Stewart, and Robert Green, the Mentor store's general manager, are liable to Allan for age discrimination and wrongful discharge, and liable to Sharon for sexual harassment and wrongful discharge.
 {¶ 8} On January 3, 2002, the trial court granted Sears's motion for summary judgment. This appeal followed.
 {¶ 9} We consider an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion which is adverse to the nonmoving party.[3]
 {¶ 10} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact.[5]
 {¶ 11} In their first assigned error, appellants argue the trial court erred by granting summary judgment on Allan's claims for age discrimination and wrongful termination. We disagree.
 {¶ 12} It is an unlawful discriminatory practice for "any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."[6]
 {¶ 13} Further, "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."[7]
 {¶ 14} We generally apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to cases involving alleged violations of R.C. 4112.[8] In McDonnell Douglas Corp. v. Green,[9] the United States Supreme Court "established a flexible formula to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees."[10] We adopt this formula to fit the specific circumstances of each case.[11]
 {¶ 15} Initially, we look to whether the plaintiff set forth a prima facie case of discrimination. As set forth in Barker v. Scovill,Inc.,[12] the plaintiff must demonstrate he or she: (1) belonged to a protected class, (2) was discharged, (3) possessed the necessary qualifications for the job, and (4) he or she was replaced by, or the discharge permitted the retention of, a person from outside the protected class.[13]
 {¶ 16} If the plaintiff establishes a prima facie case of discrimination, a presumption of unlawful discrimination arises.[14]
The burden then shifts to the employer to set forth a legitimate, nondiscriminatory reason for discharging the plaintiff.[15]
 {¶ 17} Finally, the plaintiff must counter with proof that the employer's reasons were pretextual or, in other words, simply not worthy of credence.[16] Despite these shifting burdens, the burden of proving unlawful discrimination ultimately rests with the plaintiff.
 {¶ 18} In its motion for summary judgment, Sears did not challenge whether appellants established a prima facie case of age discrimination. Nevertheless, the record reveals Allan satisfied the requisite elements. Sears terminated Allan's employment when he was fifty-two years of age, and thus a member of the protected class. Allan set forth facts which demonstrate he performed his job adequately for several years, and received satisfactory reviews from his supervisors, thus establishing his qualification to maintain his position. Finally, Allan averred that he was replaced by an employee outside the protected class. These facts, unrebutted by Sears, established a prima facie case of age discrimination.
 {¶ 19} The burden then shifted to Sears to set forth a legitimate, nondiscriminatory reason for terminating Allan. Joe Duganiero, a Sears Manager of Asset Protection, determined that Allan and a co-worker, Terry Cummings, violated several Sears policies by improperly selling and returning store merchandise. Sears relied upon these violations as grounds for terminating Allan's employment.
 {¶ 20} One violation involved Allan retaining loaned merchandise several months beyond its return date. On March 12, 1997, Allan properly borrowed a computer from Sears for a period of fifteen days; however, he failed to return the computer until it was several months past due.
 {¶ 21} The second violation involved Allan conducting his own purchase and return transactions and then retaining a duplicate credit of $1021.53 to his wife's credit card. Duganiero averred Sears prohibited employees from conducting their own transactions. Further, Allan retained the duplicate credit for at least two months without attempting to rectify the error.
 {¶ 22} The other violations involved Allan purchasing merchandise at prices well below their supposed values. On May 13, 1997, Cummings authorized the sale of returned patio furniture to Allan for $30 two days after the original customer returned this merchandise. The furniture originally sold for $420.99. On May 19, 1997, Cummings manually reduced the price of a returned lawnmower and, moments later, sold the item to Allan for $79.99. Sears originally sold the lawnmower for $159.99, and had restocked it less than one day prior to Allan's purchase.
 {¶ 23} According to Duganiero, merchandise returned by a customer is classified "991," and is automatically reduced in price by twenty percent. Additional price reductions are then considered after seven to ten days elapse from the return date. Selling items at a reduced price far in excess of twenty percent and less than three days after their return violated Sears's company policy. Further, Duganiero stated that these transactions created the appearance of impropriety because the drastically reduced prices were not offered first to the general public before a Sears employee. In setting forth these company policy violations, Sears met its burden by demonstrating legitimate, nondiscriminatory reasons for Allan's termination.
 {¶ 24} We now look to whether Allan countered with proof that Sears's reasons were pretextual, or simply not worthy of credence. Allan did not deny he committed the acts upon which Sears relied in terminating him. Rather, he argues the violations are trivial and he did nothing other employees have not done. In failing to dispute the policy violations, Allan accedes Sears possessed a legitimate, nondiscriminatory reason for terminating his employment, but still insists he received disparate treatment in that Sears did not dismiss other employees who committed similar violations.
 {¶ 25} While a legal basis exists for finding discrimination based on dissimilar treatment of employees, such other employees must be similarly situated to the plaintiff in all respects.[17] To establish the proper comparison, the plaintiff must demonstrate he and the other employees "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[18]
 {¶ 26} Allan cited two examples of sales to fellow employees at considerably reduced prices, but failed to demonstrate these employees were similarly situated to himself. In the first example, the manager authorized the reduced price sales; in the second example, the sale took place at a different store and under the watch of a different manager than Allan. Thus, Allan failed to demonstrate a similarly situated employee was treated differently than he.
 {¶ 27} Allan also argued his termination resulted from his length of service, salary level, association with Cummings, and marriage to Sharon Kanieski; however, Allan presented no evidence in support of these allegations. As no evidence exists to substantiate that Allan's termination was motivated by discriminatory intent, his allegations fail to demonstrate that Sears's legitimate, non-discriminatory reasons for termination were pretextual or simply not worthy of credence. Accordingly, Allan failed to establish Sears violated R.C. 4112.
 {¶ 28} We now turn to whether Sears violated public policy in terminating Allan's employment. A claim for wrongful discharge in violation of public policy exists if the plaintiff can demonstrate: (1) the existence of a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) the employee's termination would jeopardize that public policy; (3) the employee's termination was motivated by conduct related to that public policy; and (4) the employer lacked an overriding legitimate business justification.[19]
 {¶ 29} Although the public policy against terminating employees based upon age related discrimination is manifest in R.C. 4112, Allan did not establish any other element of the tort. The record does not demonstrate that Allan's termination would jeopardize public policy disfavoring age related discrimination or that Sears's underlying motivation was related to such public policy. Finally, Allan admitted violating company policies on several occasions, thus providing Sears with an overriding legitimate business justification for terminating his employment. Accordingly, appellants failed to establish that Sears violated public policy by terminating Allan's employment.
 {¶ 30} For the foregoing reasons, we conclude the trial court did not err by granting Sears's motion for summary judgment as to Allan's age discrimination and wrongful discharge claims. Accordingly, appellants' first assigned error is without merit.
 {¶ 31} In their second assigned error appellants argue the trial court erred by granting summary judgment on Sharon's claims for sexual harassment and wrongful discharge. Again, we disagree.
 {¶ 32} Before considering the merits of this assigned error, we must first determine whether, as Sears argues, Sharon filed her sexual harassment claim outside the six-year statute of limitations.[20]
Appellants filed their initial complaint on September 23, 1999; thus, an actionable event must have occurred on or after September 23, 1993.
 {¶ 33} Although the record is not entirely clear as to when each alleged incident of sexual harassment occurred, Sharon stated via deposition that the harassing conduct continued until sometime between the fall of 1995 and her marriage to Allan in January of 1996. As this period falls after September 23, 1993, appellants brought Sharon's sexual harassment claim within the statute of limitations.
 {¶ 34} We now turn to the merits of Sharon's complaints. Because this assigned error stems from summary judgment, we again proceed under a de novo standard of review.
 {¶ 35} R.C. 4112.02(A) makes it an unlawful discriminatory practice "for any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 36} Sexual harassment may take two general forms: quid pro quo, where the harassment "is directly linked to the grant or denial of a tangible economic benefit," and hostile work environment where the harassment "has the purpose or effect of creating a hostile or abusive working environment" while not affecting economic benefits.[21] On appeal, appellants solely argue hostile work environment.
 {¶ 37} To establish their claim of hostile work environment sexual harassment, appellants must demonstrate: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) the harassment complained of was based on sex; (4) the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in tangible job detriment; and (5) the existence of respondeat superior liability.[22] "Respondeat superior liability for the acts of an employee acting outside the scope of employment will only attach where the employer has the ability and knowledge to control the employee."[23]
 {¶ 38} In moving for summary judgment, Sears presented evidence that any sexual relationship between Sharon and Stewart was consensual, that Stewart was not her supervisor when she was denied the managerial position and he had no control over whether she received the position, and that even if harassment occurred, her failure to notify Sears of such conduct at a time when it could take curative measures absolved it of liability. These arguments, supported by affidavits and deposition testimony, satisfied Sears's initial burden of establishing that no genuine issue of material fact exists as to appellant's sexual harassment claim.
 {¶ 39} In response, Sharon maintained Stewart repeatedly told her that he "wanted to be with her [sexually]," touched her breasts and other body parts, threatened to commit suicide if she would not be with him, and "lured" her into having sex with him. Sharon further claimed that in 1994 she failed to secure a managerial position because she spurned Stewart's unwelcome sexual advances. Despite these complaints, Sharon admitted she consensually engaged in sexual intercourse with Stewart.
 {¶ 40} However, the issue before us is not Sharon's credibility, rather, we are bound to determine whether each party sustained their respective summary judgment burdens. Following Sears's motion for summary judgment, Sharon failed to offer any evidence from which we may reasonably conclude that her submission to Stewart's unwelcome advances was an express or implied condition for receiving job benefits or that her refusal to submit to the supervisor's sexual demands resulted in tangible job detriment. Accordingly, Sharon failed to demonstrate a necessary element to sustain her hostile work environment sexual harassment claim.
 {¶ 41} Appellants also claim Sears violated public policy by discharging her in retaliation for spurning Stewart's alleged sexual harassment. However, Sharon stated she left the Mentor store because she was getting married and the store manager did not want married couples working together. Sharon failed to establish she was forced to leave the Mentor store because she spurned Stewart's sexual advances.
 {¶ 42} As appellants did not effectively claim Sears discharged or disciplined Sharon in violation of public policy, their argument reduces to sexual harassment in violation of public policy.[24] In Bell, the appellant based a tortious violation of public policy claim on Collins v.Rizkana[25] and Kulch v. Structural Fibers, Inc.,[26] wherein the Ohio Supreme Court stated that Ohio recognizes claims for wrongful discharge in violation of public policy as an exception to the common law employment-at-will doctrine.[27] In Bell, we noted "the Supreme Court of Ohio first recognized wrongful discharge in violation of public policy as a viable cause of action in Ohio in Greeley v. Miami ValleyMaintenance Contractors, Inc. (1990), 49 Ohio St.3d 228 * * *. However, an employee may maintain a common-law cause of action against her employer pursuant to Greeley and its progeny only so long as that employee * * * was subsequently discharged or disciplined."[28]
 {¶ 43} We further stated:
 {¶ 44} "In the instant case, appellant is not claiming that she was discharged or disciplined in violation of public policy. Instead, appellant argues, in effect, that she was harassed in violation of public policy. Neither Greeley nor its progeny have recognized a tort for harassment in violation of public policy. Likewise, this court refused to expand Greeley to create a cause of action for harassment in violation of public policy."[29]
 {¶ 45} Because appellants failed to fulfill their summary judgment burden of demonstrating a genuine issue of material fact as to whether Sharon suffered work-related detriment in violation of public policy, the trial court did not err by granting summary judgment on this issue.
 {¶ 46} For the foregoing reasons, we conclude the trial court did not err by granting Sears's motion for summary judgment as to Sharon's sexual harassment and wrongful discharge claims. Accordingly, appellants' second assigned error is without merit.
Judgment affirmed.
JAMES D. SWEENEY, P.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id., citing Brown v. Scioto Bd. Of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] R.C. 4112.02(A).
[7] R.C. 4112.14(A).
[8] Plumbers Steamfitters Joint Apprenticeship Commt. v. OhioCiv. Rights Comm. (1981), 66 Ohio St.2d 192.
[9] (1973) 411 U.S. 792.
[10] Plumbers Steamfitters Joint Apprenticeship Commt. at 197.
[11] See McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792, 802, n. 13 ("The facts necessarily will vary in [employment discrimination] cases, and the specification above the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.")
[12] (1983), 6 Ohio St.3d 146.
[13] Id. at paragraph one of the syllabus.
[14] Sheridan v. Drs. Alperin Ruch, D.D.S., Inc. (Dec. 20, 1997), Cuyahoga App. No. 70813, citing St. Mary's Honor Ctr. v. Hicks
(1993), 509 U.S. 502, 506.
[15] Sheridan at 6; McDonnell-Douglas Corp. at 802.
[16] Sheridan at 6-7, citing Barker v. Scovill, Inc. (1983),6 Ohio St.3d 146, 148 and Wagner v. Allied Steel Tractor Co.
(1995), 105 Ohio App.3d 611; Texas Dept. of Community Affairs v. Burdine
(1981), 450 U.S. 248.
[17] Mitchell v. Toledo Hosp. (C.A.6, 1992), 964 F.2d 577.
[18] Id.
[19] Collins v. Rizkana (1995), 73 Ohio St.3d 65.
[20] See Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc. (1994),70 Ohio St.3d 281 (holding that R.C. 4112.99 is a remedial statute and is thus subject to R.C. 2305.07's six-year statute of limitations.)
[21] Hampel v. Food Ingredient Specialties, Inc. (2000),89 Ohio St.3d 169, 176.
[22] Steppe v. KMart Stores (1999), 136 Ohio App. 454, citing Maderav. Satellite Shelters, Inc. (Aug. 12, 1998), Cuyahoga App. No. 73172, quoting Takach v. Am. Med. Tech., Inc. (1998), 128 Ohio App.3d 457,464-466.
[23] Steppe, citing Kerans v. Porter Paint Co. (1991),61 Ohio St.3d 486.
[24] See Bell v. Cuyahoga Community College (1998),129 Ohio App.3d 461.
[25] (1995), 73 Ohio St.3d 65.
[26] (1997), 78 Ohio St.3d 134.
[27] Bell at 465.
[28] Id.
[29] Id.