OPINION
Plaintiff-appellant, Gerald L. Owens, appeals from a judgment of the Ohio Court of Claims in favor of defendant-appellee, The University of Toledo ("UT").
This appeal arises out of the termination of plaintiff's employment as a police officer with the University of Toledo Police Department ("UTPD"). Plaintiff began his career as a law enforcement officer with UTPD in January 1986. On September 5, 1995, plaintiff was arrested and charged with four counts of aggravated drug trafficking. As a result of plaintiff's arrest, UT charged plaintiff with "failure of good behavior" as set forth in the collective bargaining agreement between UT and the University of Toledo Police Patrolman's Association ("UTPPA"), suspended him without pay on that charge, and notified him that a disciplinary hearing would be held on the charge.
At plaintiff's initial disciplinary hearing on September 12, 1995, UT placed plaintiff on an involuntary leave of absence without pay and continued the hearing pending the outcome of plaintiff's criminal case.
Plaintiff's criminal trial on the drug trafficking charges initially began on January 30, 1996. However, a mistrial was declared in this first trial immediately following the prosecutor's opening statements. A second trial was held on March 26, 1996, and resulted in plaintiff being convicted on four counts of aggravated drug trafficking. Following sentencing, plaintiff was incarcerated at the Orient Correctional Facility.
On April 11, 1996, UT sent plaintiff and UTPPA president, Paul Csurgo, a letter indicating that pursuant to R.C. 124.34 and the collective bargaining agreement between UT and UTPPA, plaintiff had been charged with neglect of duty and failure of good behavior as a result of his convictions for drug trafficking. Pursuant to this letter, plaintiff was given until April 19, 1996, to submit a written explanation as to why his employment with UT should not be terminated.
On April 18, 1996, Csurgo responded to UT's letter of April 11, 1996, with a letter notifying UT that plaintiff had appealed his drug trafficking convictions and requesting that UT postpone its disciplinary proceeding against plaintiff until his criminal appeal had been decided. By a memorandum dated April 24, 1996, UT notified Csurgo that it was extending the deadline for responding to the charges against plaintiff to May 8, 1996.
On May 8, 1996, UTPPA sent a letter to UT reiterating its request that the university postpone taking any action against plaintiff until after the resolution of his criminal appeal.
On May 9, 1996, UT sent a letter to plaintiff at the Orient Correctional Facility by certified mail, return receipt requested, notifying plaintiff of the termination of his employment with the university. Csurgo was also sent a copy of this letter. Plaintiff testified that although he did receive the notice of his termination, its delivery was delayed considerably due to his incarceration.
The record also contains a draft of a letter dated May 13, 1996, from Csurgo to plaintiff. This letter outlines the actions taken by UTPPA on plaintiff's behalf up to that time. The letter further explains that UT's termination of plaintiff's employment is not subject to the grievance and arbitration procedures set forth in the collective bargaining agreement, but must be appealed to the State Personnel Board of Review ("SPBR"). Plaintiff testified that he never received this letter, and Csurgo testified he did not remember preparing or asking someone else to prepare this letter, and he did not believe he ever informed plaintiff UTPPA was not going to contest his termination.
On May 30, 1996, plaintiff was released from prison after being granted shock probation.
On March 31, 1998, the Sixth District Court of Appeals reversed plaintiff's drug trafficking convictions on the grounds of prosecutorial misconduct and held that the Double Jeopardy Clause of theFifth Amendment to the United States Constitution prevented plaintiff's retrial.
On April 24, 1998, plaintiff's counsel wrote to UT requesting plaintiff be reinstated to his job as a police officer given that his drug trafficking convictions had been overturned on appeal. In a letter dated May 8, 1998, UT's general counsel denied plaintiff's request for reinstatement stating that plaintiff's convictions had not been overturned "on the merits," and UT could not consider re-employing plaintiff until such time as his name was completely cleared.
On March 24, 1999, plaintiff filed a complaint against UT in the Court of Claims asserting claims for racial discrimination, violation of public policy, and negligent infliction of emotional distress. Beginning on April 10, 1999, a trial was held on plaintiff's claims. At the outset of the trial, plaintiff voluntarily dismissed his racial discrimination claim. However, the transcript reveals that in addition to plaintiff's public policy and negligent infliction of emotional distress claims, an additional claim for wrongful termination was tried with the consent of the parties. On September 13, 2000, the Court of Claims entered judgment for UT on each of plaintiff's claims. Plaintiff appeals from that judgment, assigning the following errors:
 I. THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT WAS PROPERLY NOTIFIED OF HIS APPEAL RIGHTS UNDER ORC § 124 ET SEQ., REGARDING HIS REMOVAL FROM PUBLIC SERVICE.
 II. THE TRIAL COURT ERRED IN DETERMINING THAT NOTICE FROM A PARTY OTHER THAN THE EMPLOYER REGARDING THE APPELLANT'S DUE PROCESS RIGHTS COMPLIED WITH ORC § 124.34.
 III. THE TRIAL COURT ERRED IN FINDING THAT APPELLEE WAS NOT OBLIGATED TO REINSTATE APPELLANT UPON REVERSAL OF HIS CRIMINAL CONVICTION.
Plaintiff's first and second assignments of error will be addressed together, as both challenge the trial court's entry of judgment for UT on plaintiff's claim for wrongful termination.
As tried before the Court of Claims, the basis of plaintiff's wrongful termination claim was UT's failure to file a copy of plaintiff's letter of termination with the SPBR as required by R.C. 124.34.[1] R.C. 124.34
provides in relevant part:
 In any case of reduction, suspension of more than three working days, or removal, the appointing authority shall furnish such employee with a copy of the order of reduction, suspension, or removal, which order shall state the reasons therefore. Such order shall be filed with the director of administrative services and state personnel board of review, or the commission, as may be appropriate.
All sides appear to agree that UT's May 9, 1996 letter of termination constitutes an "order of removal" under R.C. 124.34, and UT concedes that it never filed a copy of that letter with the SPBR. Accordingly, at trial plaintiff argued that UT's failure to file a copy of plaintiff's letter of termination with the SPBR rendered his termination invalid, and required UT to restore him to his former employment with back pay.
Relying on the Ohio Supreme Court's decision in State ex rel. Shine v. Garofalo (1982), 69 Ohio St.2d 253, the trial court concluded that UT's failure to file plaintiff's "order of removal" with the SPBR did not render the removal invalid, but, pursuant to Ohio Adm. Code 124-1-03(G), merely resulted in plaintiff having thirty days from the date of his actual notice[2] of his termination, instead of ten days from the filing of the order with the SPBR, in which to appeal his termination. Plaintiff has not appealed from this determination. Instead, plaintiff's first and second assignments of error assert that the termination of plaintiff's employment is invalid because UT's May 9, 1996 "order of removal" failed to advise plaintiff of his right to appeal.
At the time of plaintiff's termination, Ohio Adm. Code 123:1-31-01
provided:
 The removal, reduction, or suspension of an employee, except as otherwise provided in these rules, shall be made for one or more of the statutory reasons enumerated in Section 124.34, Ohio Revised Code. The employee shall be notified in writing on forms or those equivalent to those provided by the Director or the Personnel Board of Review of the statutory reasons for the action, and the effective date of the action. This form shall advise the employee of his right to appeal. Any such appeal shall be made in accordance with the rules of the Personnel Board of Review. (Emphasis added.)
Further, UT's May 9, 1996 "order of removal" contains no reference whatsoever to any appeal rights. In addition, we need not determine whether the notice of appeal rights contained in the May 13, 1996 draft letter from Csurgo to plaintiff satisfy the requirements of Ohio Adm. Code123:1-31-01, as the evidence in the record unequivocally indicates plaintiff never received this letter.
While it is indisputable plaintiff was not notified of his right to appeal his termination as required by Ohio Adm. Code 123:1-31-01, we need not determine whether this lack of notice renders plaintiff's termination invalid, as plaintiff did not raise this issue before the trial court, but attempts to raise it for the first time in this appeal. It is a well-established principle that issues which were not presented for consideration before the trial court will not be considered on appeal. Fed. Mgt. Co. v. Coopers Lybrand (2000), 137 Ohio App.3d 366, 380. Plaintiff's first and second assignments of error are overruled.
Plaintiff's third assignment of error challenges the trial court's entry of judgment for UT on plaintiff's claim for violation of public policy.
Plaintiff's public policy claim rests on the Ohio Supreme Court's decision in Greeley v. Miami Valley Maintenance Contrs., Inc. (1990),49 Ohio St.3d 228. Greeley involved an at-will employee who was discharged due to a court order requiring his employer to withhold his child support payments from his wages. Although R.C. 3113.213(D) expressly provided that "[n]o employer may use an order to withhold personal earnings *** as a basis for a discharge of *** an employee ***," the provision did not expressly provide for a private cause of action. As a result, an at-will employee, such as the plaintiff in Greeley, was without an effective means of redressing a discharge in violation of R.C. 3113.213(D). To remedy this situation, the Greeley court created a public policy exception to the employment at-will doctrine which permits an at-will employee who is discharged for a reason which is prohibited by statute to bring a cause of action for wrongful discharge against his employer. Id., paragraph one of the syllabus.
In the present case, plaintiff's employment relationship with UT was not an employment at-will relationship. Rather, plaintiff was a member of a union. The Ohio Supreme Court has held that an action under its holding in Greeley may only be brought by an at-will employee, and not by an employee whose terms of employment are governed by a collective bargaining agreement. Haynes v. Zoological Society of Cincinnati (1995),73 Ohio St.3d 254, 258. This conclusion is logical, as a union member, unlike an at-will employee, is able to raise a claim of discharge for a statutorily prohibited reason in the post-termination proceedings provided for by the governing collective bargaining agreement. Thus, the proper place for plaintiff to have raised his public policy claim was before the SPBR. Plaintiff's third assignment of error is overruled.
Having overruled plaintiff's three assigned errors, we affirm the judgment of the Ohio Court of Claims.
 _________________ McCORMAC, J.
TYACK and DESHLER, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The parties stipulated that plaintiff's termination was governed by R.C. 124.34.
[2] In determining that plaintiff had in fact received actual notice of his termination, the trial court relied upon the May 13, 1996 draft letter from Csurgo to plaintiff. Because the evidence in the record establishes that plaintiff never received this letter, the trial court erred in this regard. However, this error was harmless, as plaintiff testified that he received UT's May 9, 1996 letter notifying him of his termination while he was incarcerated at Orient Correctional Facility.