OPINION
{¶ 1} In this accelerated calendar case, appellant, Jeffrey Schwab, appeals from a decision of the Trumbull County Court of Common Pleas, granting appellee, Delphi Packard Electric Systems, summary judgment.
 {¶ 2} Various deposition testimonies disclose the following facts. Appellant began his employment with appellee on August 9, 1993, and is currently still employed by appellee. In December 1996, appellant began a relationship with a married co-worker, Terry Jupancha ("Terry"), whose husband was also employed by appellee.[1]
 {¶ 3} As their relationship progressed, both appellant and Terry began to display physical signs of affection for each other while on appellee's premises. On June 12, 1997, appellee's security officer reported that appellant and Terry had been kissing "pretty passionately" in the lobby of appellee's plant. A short time later, in October 1997, a co-worker complained to management that appellant and Terry's physical displays of affection at work were offensive.
 {¶ 4} Following the complaint, plant general supervisor, Stephen Sandberg ("Sandberg"), spoke with each employee in the department from which the complaint arose. As a result of these discussions, Sandberg concluded that appellant and Terry's physical displays of affection were inappropriate behavior while at the plant. Sandberg proceeded to counsel both appellant and Terry regarding this matter and requested that they cease their excessive displays of affection in the workplace.
 {¶ 5} On February 5, 2001, appellant filed a complaint against appellee with the Trumbull County Court of Common Pleas. In his complaint, appellant made four separate claims: (1) sex discrimination pursuant to R.C. 4112 et seq.; (2) a public policy claim pursuant to R.C. 4112 et seq.; (3) defamation; and (4) negligence.
 {¶ 6} Following discovery, on March 25, 2002, appellee moved for summary judgment as to all of appellant's claims. Appellant then filed his brief in opposition to appellee's motion for summary judgment. On May 29, 2002, the Trumbull County Court of Common Pleas issued a judgment entry granting summary judgment in favor of appellee on all four of appellant's claims. The trial court gave no basis for its decision; however, it stated that its judgment was a final appealable order.
 {¶ 7} From this judgment appellant filed a timely notice of appeal setting forth one assignment of error for our consideration:
 {¶ 8} "The trial court abused its discretion in granting defendant-appellees (sic) Rule 56 motion with no explanatory language."
 {¶ 9} Before addressing the merit of appellant's assignment of error, we will set forth the appropriate standard of review.
 {¶ 10} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Under Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in their favor. Civ.R. 56; Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385; Leibreich v. A.J.Refrigeration, Inc. (1993), 67 Ohio St.3d 383, 385.
 {¶ 11} Material facts are defined as facts that might affect the outcome of the suit under the governing law of the case. Turner v.Turner (1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To ascertain what constitutes a genuine issue, the court must resolve whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
 {¶ 12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280. Accordingly, the moving party must point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving parties claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the burden shifts to the nonmoving party to respond as provided in the rule, so as to demonstrate that there is no genuine issue of a material fact. Id. However, if the nonmoving party fails to meet this burden, then summary judgment may be entered against that party. Id.
 {¶ 13} In the instant case, we will be reviewing a claim of discrimination based on sex pursuant to R.C. 4112.02(A). It is important to note, "the Supreme Court of Ohio has held that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is applicable to cases involving R.C. Chapter 4112." Dunnigan v. Lorain, 9th Dist. No. 02CA008010,2002-Ohio-5548, at ¶ 10. As such, our examination of applicable case law may include federal cases pertaining to Title VII of the Civil Rights Act of 1964.
 {¶ 14} With the appropriate standard of review set forth, we will now turn our attention to the instant appeal. As an initial matter, appellant's appellate brief only addresses the issues of sex discrimination and public policy, and omits any discussion of defamation and negligence. App.R. 16(A)(7) states that appellant shall include in its brief "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See, also, App.R. 12(A)(2). Here, appellant has failed to set forth any argument or evidence from the record that relates to his defamation and negligence claims. Consequently, and in accordance with App.R. 16(A)(7) and 12(A)(2), we will forego any review regarding the grant of summary judgment as to these claims.
 {¶ 15} Appellant states the issue presented for review as whether there were "genuine issues of fact presented by a male of sex discrimination in contravention of Title VII of the Civil Rights Act as mirrored in Ohio R.C. Chapter 41 and was Appellee entitled to Judgment as a matter of Law." The majority of appellant's argument is based upon alleged reverse sex discrimination by appellee. Appellant explains that such discrimination originated from his relationship with Terry. Although not totally clear, appellant seems to contend that appellee's "disciplinary actions" and "overshow of supervision" regarding his relationship with Terry created a hostile work environment. Specifically, the alleged discriminatory acts included: (1) an incident report for giving Terry a kiss goodbye; (2) being confined to his department and not allowed to see Terry while on personal time; (3) being told that he would be fired if caught holding her hand; and (4) being threatened that sexual harassment charges would be filed against him by appellee on Terry's behalf.[2] Furthermore, appellant contends that similarly situated female employees were not disciplined for comparable "harmless displays of affection."
 {¶ 16} In pertinent part, R.C. 4112.02(A) states that it shall be an unlawful discriminatory practice for "any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 17} It is evident by the language of the statute that it is unlawful for an employer to discriminate against an employee based on his or her sex. A violation of R.C. 4112.02(A)'s prohibition against sex discrimination may be established by proving either of two types of sexual harassment: (1) "quid pro quo" sexual harassment, i.e., harassment directly linked to the grant or denial of a tangible economic benefit, or (2) "hostile-environment" sexual harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment. Hampel v. Food IngredientsSpecialties, Inc., 89 Ohio St.3d 169, 176, 2000-Ohio-128.
 {¶ 18} In the case at bar, the issue presented concerns hostile-environment sex discrimination. With respect to hostile-environment sex discrimination, the Supreme Court of Ohio has held that "R.C. 4112.02(A) protects men as well as women from all forms of sex discrimination in the workplace." Hampel at paragraph three of the syllabus. To establish a claim of hostile-environment sexual discrimination, a plaintiff must show: "(1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the `terms, conditions, or privileges of employment, or any matter directly of indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." Id. at 176-177.
 {¶ 19} Although sex is the sine qua non for any sex discrimination case, the offending "conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." Oncale v.Sundowner Offshore Sevices, Inc. (1998), 523 U.S. 75, 80. Accordingly, "actions that are simply abusive, with no sexual element, can support a claim for sexual harassment if they are directed at an employee because of his or her sex." Hampel at 178.
 {¶ 20} Appellant may indeed have been discriminated against, but discrimination per se is not prohibited unless it is based on one of the forbidden categories listed in R.C. 4112.02(A). Essentially, what appellant's own allegations claim is that he participated in consensual questionable physical displays of affection in the work place, and management's attempt to control such behavior was a form of sexual harassment. Further, he claimed that management's actions were actually instigated by a relative in management of his then girlfriend's ex-husband. There is no evidence or explanation of what the specific motivation was.
 {¶ 21} It is also apparent that beyond his own conclusory statements appellant has failed to set forth affirmative facts demonstrating that similarly situated females were treated differently. Instead, the evidence confirms that management warned both appellant and his female companion that any further physical displays of affection would not be tolerated.
 {¶ 22} Furthermore, after reviewing the record, appellant himself repeatedly explains that the motivation for appellee's alleged discrimination was based on his relationship with Terry rather than his male gender. Appellant's affidavit, attached to his brief in opposition, stated, "I have been subject to discrimination based on my personal relationship with my current wife and co-worker. This was due to the fact that my current wife's ex-husband had a close relative in upper management at Delphi." Moreover, in his deposition testimony appellant stated that he believed the alleged discrimination of appellee "was due to the fact of who I was dating at the time."
 {¶ 23} Although appellant claims there was a connection between appellee's alleged discriminatory actions and his gender, he fails to set forth facts to substantiate this link and relies solely upon conclusory statements in his affidavit and deposition testimony. We are unwilling to expand sexual discrimination actions as automatically encompassing anything that pertains to sex and a conflict between labor and management. Here, based on the actual facts alleged, it is clear that it was appellant's physical displays of affection in the workplace that were inappropriate, not management's subsequent actions. Frankly, there are no facts alleged which would demonstrate management's response would have been any different if appellant had been female. As such, appellant has failed to demonstrate that he was discriminated against based upon his sex and his first argument is not well taken.
 {¶ 24} Appellant's second argument is based on the premise that appellee's discriminatory actions under R.C. Chapter 4112 endanger the public policy of the state of Ohio. As stated previously, appellant was not discriminated on account of his sex, and, therefore, R.C. 4112.02(A) is not applicable in the instant case. Appellant's second argument is not well taken.
 {¶ 25} Assuming arguendo that appellant had established he was discriminated against based on sex, his public policy argument would still ultimately fail because he was not an at-will employee. In Greeleyv. Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228,233, the Supreme Court of Ohio created an exception to the employment-at-will-doctrine and held that an at-will employee cannot be terminated for reasons that violate public policy. However, the Greeley
exception only applies to at-will employees. Haynes v. Zoological Soc. ofCincinnati (1995), 73 Ohio St.3d 254, 258.
 {¶ 26} An at-will employee is any employee who may be terminated "for any reason which is not contrary to law." Haynes at 258. In the case sub judice, appellant's terms and conditions of employment were governed by a collective bargaining agreement. Due to appellant's union member status, he is clearly not an at-will employee. Thus, the Greeley public policy exception is not applicable. For this additional reason, appellant's second argument is without merit.
 {¶ 27} Based on the foregoing analysis, the trial court did not err in granting appellee's motion for summary judgment and its judgment is affirmed.
Judgment affirmed.
DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.
[1] Following her divorce, Terry and appellant were married and are currently still married.
[2] Appellant explains that Terry was unaware of the possible initiation of a sexual harassment charge on her behalf and denied any involvement regarding such a charge.