JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiff-appellant Julius Balog appeals the trial court's granting a directed verdict in favor of defendant-appellee Matteo Aluminum, Inc. ("Matteo") on Balog's claims for retaliatory discharge and wrongful discharge in violation of public policy.[1] We find merit to the appeal and reverse and remand.
 {¶ 2} Balog filed a claim against Matteo on March 19, 2002, claiming retaliatory discharge in violation of R.C. 4123.90, wrongful discharge in violation of public policy, and handicap discrimination.
 {¶ 3} The matter proceeded to trial, where the following evidence was presented.
 {¶ 4} Balog testified that he was hired by Steve Matteo in December 2000 as a long-distance truck driver. On June 18, 2001, Balog was required to make several deliveries to the west coast. When he arrived in Missouri, he realized one of the pallets on his truck had tipped toward the back of the truck. As he attempted to straighten the pallet, he fell off the truck and landed on his back. He sought no immediate medical attention, although he reported the accident to his employer by telephone, and then proceeded to his next delivery.
 {¶ 5} Because his pain was becoming worse, Balog went to the emergency room on July 11 and had an X-ray taken. While at the hospital, he completed a worker's compensation accident form. He was excused from work by the ER doctor until he could be seen by his personal physician.
 {¶ 6} Balog consulted his personal physician, Dr. Tupa, on July 30. Dr. Tupa determined that Balog was suffering from contusions, bruising, strains and sprains, and a possible rotator cuff tear in his shoulder. The doctor prescribed muscle relaxers and mild pain pills and excused him from work from July 30 to August 15. The doctor also ordered an MRI, which was performed in August 2001.
 {¶ 7} On August 7, Balog switched to Dr. Burchett as a personal physician because Dr. Tupa had allowed Balog to drive while taking his medication. Dr. Burchett prescribed medication and provided him with a medical form, excusing him from work from August 7 until September 6. On August 16, however, Dr. Burchett found that Balog could return to work on August 20.
 {¶ 8} According to Balog, Steve Matteo was aware that he was taking pain medication because Balog told him several times. Balog stated that when he drove the truck, however, he did not take his medication, so that his driving was not affected.
 {¶ 9} While on a cross-country delivery from September 21-29, Balog requested permission from Matteo to leave the truck and fly home because of a family emergency. Steve Matteo denied his request. During the conversation, Matteo also told him to contact Matteo's attorney and settle his workers' compensation claim. Balog informed him that he wanted to talk with an attorney first.
 {¶ 10} According to Balog, when he returned from the delivery, Matteo asked him whether he had called Matteo's attorney. Balog again told him that he wanted to speak with an attorney first.
 {¶ 11} On October 10, 2001, Matteo called Balog at home because he needed a delivery made to Washington state. Balog testified that he told Matteo he could not drive because he was on "dope" and had a doctor's appointment and a workers' compensation hearing during the time he would be on the road. According to Balog, Matteo advised him that the customers needed the deliveries. Balog responded by hanging up on Matteo. Balog's phone rang a couple of times thereafter, but he did not answer. Matteo then faxed a letter to Balog informing him that he was being terminated for insubordination.
 {¶ 12} On cross-examination, Balog acknowledged he was an at-will employee and aware of the company's policy against insubordination.
 {¶ 13} Sandi Torres, Matteo's office manager, testified that she did not recall receiving a telephone call from Balog immediately after the accident, but did recall his informing her of the injury when he returned from the trip. She advised him to see the company safety director to fill out an accident report.
 {¶ 14} Matteo's attorney moved for directed verdicts, arguing that Balog failed to prove he was handicapped, failed to refute that he was terminated for insubordination, and failed to prove he was prescribed a narcotic. The trial court granted the motion for directed verdict on all of the claims.
 {¶ 15} Balog raises three assignments of error on appeal.
 Credibility {¶ 16} In his first assignment of error, Balog argues that the trial court erred by considering the credibility of the witnesses in granting Matteo's directed verdicts.
 {¶ 17} The applicable standard of review for a directed verdict is set forth in Civ.R. 50(A)(4), which provides:
"When a motion for a directed verdict has been properly made, and thetrial court, after construing the evidence most strongly in favor of theparty against whom the motion is directed finds that upon anydeterminative issue reasonable minds could come to but one conclusionupon the evidence submitted and that conclusion is adverse to such party,the court shall sustain the motion and direct a verdict for the movingparty as to that issue."
 {¶ 18} This rule requires that the trial court give the nonmoving party the benefit of all reasonable inferences that may be drawn from the evidence. Broz v. Winland (1994), 68 Ohio St.3d 521, 526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue.Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285.
 {¶ 19} Although a motion for a directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Id. at 68-69. A motion for a directed verdict, therefore, presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment.Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13.
 {¶ 20} A review of the trial court's journal entry and oral pronouncement at trial does not indicate that it granted the directed verdict based on credibility, but granted the motion because it found Balog failed to sustain his burden of proof on his claims. There is nothing in the record to suggest that the trial court improperly based the directed verdict on credibility. Therefore, the first assignment of error is overruled.
 Retaliatory Discharge in Violation of R.C. 4123.90 {¶ 21} In his second assignment of error, Balog argues that the trial court erred by directing a verdict on his retaliatory discharge claim, because he presented a prima facie case.
 {¶ 22} R.C. 4123.90, under which plaintiff brought his statutory claim for retaliatory discharge, provides in relevant part:
"No employer shall discharge, demote, reassign, or take any punitiveaction against any employee because the employee filed a claim orinstituted, pursued or testified in any proceedings under the workers'compensation act for an injury or occupational disease which occurred inthe course of and arising out of his employment with that employer."
 {¶ 23} In order to bring a successful retaliatory discharge claim pursuant to R.C. 4123.90, the employee must prove that (1) he was injured on the job, (2) filed a workers' compensation claim, and (3) was discharged in contravention of R.C. 4123.90. Kilbarger v. Anchor HockingGlass Co. (1997), 120 Ohio App.3d 332, 337-338; Wilson v. RiversideHosp. (1985), 18 Ohio St.3d 8, at syllabus. If an employee creates a prima facie case, the burden shifts to the employer to provide a legitimate nonretaliatory explanation for the discharge. Kilbarger, supra at 338. "If the employer sets forth a legitimate, nonretaliatory reason, the burden once again shifts to the employee. The employee must then establish that the reason articulated by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act." Id.
 {¶ 24} In the instant case, there is no dispute that Balog was injured on the job and that he filed a workers' compensation claim. Steve Matteo claimed he terminated Balog for insubordination, because he hung up on him and told him he could not work because he was on medication. However, there was also evidence that Matteo insisted Balog settle his workers' compensation claim even after Balog advised him that he wished to consult with an attorney first. There was also evidence that Matteo insisted Balog make the delivery to Washington State even though Balog felt he could not operate the truck safely while taking his medication. Moreover, Matteo insisted Balog make the delivery even though Balog informed him that he had a workers' compensation hearing scheduled during the time he would have been on the road.
 {¶ 25} Based on this evidence, we find there was sufficient credible evidence to permit reasonable minds to reach different conclusions on this issue. Therefore, the trial court erred in granting the directed verdict.
 {¶ 26} Accordingly, Balog's second assignment of error is sustained.
 Wrongful Discharge in Violation of Public Policy {¶ 27} In his third assignment of error, Balog argues that the trial court erred by directing a verdict on his claim for wrongful discharge in violation of public policy, because he set forth evidence that he was terminated for refusing to settle his workers' compensation claim and for refusing to drive a truck while on medication.
 {¶ 28} In Greeley v. Miami Valley Maintenance (1990),49 Ohio St.3d 228, paragraph two of the syllabus, the Ohio Supreme Court created an exception to the traditional common law doctrine of employment-at-will where a discharge is in violation of a statute and thereby contravenes public policy. The Greeley holding was later expanded to recognize a cause of action in tort when the wrongful discharge violated the "Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." Painter v. Graley (1994),70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.
 {¶ 29} A claim for wrongful discharge in violation of public policy exists if the plaintiff can demonstrate (1) the existence of a clear public policy manifested in a state or federal constitution, statute or administrative regulation, or in common law; (2) the employee's termination would jeopardize that public policy; (3) the employee's termination was motivated by conduct related to that public policy; and (4) the employer lacked an overriding legitimate business justification. Collins v. Rizkana (1995), 73 Ohio St.3d 65.
 {¶ 30} In the instant case, we find that Balog presented evidence suggesting his termination violated public policy. Balog testified that he felt uncomfortable driving an 18-wheeler while taking his medication because he knew it would affect his ability to drive. The pamphlets accompanying his medication contained warnings against operating machinery while under the influence of those drugs. He also testified that government regulations prohibit operating trucks while under the influence of the type of medication he was taking. Notwithstanding his repeated assertions that he was unable to drive a truck because he was "under the influence," Matteo insisted he make a delivery to Washington State. When Balog refused, he was terminated.
 {¶ 31} Based on this evidence, we again find that Balog presented sufficient evidence to permit reasonable minds to reach different conclusions on this issue. There was sufficient evidence upon which a jury could have concluded that Balog's termination violated a clear public policy. Therefore, the trial court erred in directing a verdict on his claim of wrongful discharge in violation of public policy.
 {¶ 32} Accordingly, Balog's third assignment of error is sustained.
 {¶ 33} Judgment is reversed and the case is hereby remanded for a new trial.
FRANK D. CELEBREZZE, JR., P.J. and DIANE KARPINSKI, J. concur.
[1] Although Balog also alleged a handicap discrimination claim, for which the trial court also directed a verdict, he does not challenge it on appeal.