GREELEY, APPELLANT, *v.* MIAMI VALLEY MAINTENANCE CONTRACTORS, INC., APPELLEE.

[Cite as Greeley *v.* Miami Valley Maintenance Contrs., Inc. (1990), 49 Ohio St. 3d 228.]

(No. 88-1829—Submitted November 22, 1989—Decided March 14, 1990.)

*Cornett & Straus, Jack Cornett, Spater, Gittes & Terzian, Frederick M. Gittes, Law Offices of Andrew J. Ruzicho* and *Louis A. Jacobs,* for appellant.

*Baden, Jones & Scheper Co., L.P.A.,* and *Thomas P. Erven,* for appellee.

Douglas, J. The issue before us is whether a violation of R.C. 3113.213 (D) gives rise to a civil cause of action for damages when an at-will employment relationship is terminated by an employer solely because of a court-ordered child support wage assignment of the employee's wages.

As a threshold matter, it is clear that we must, as a matter of law, accept all the allegations of appellant's complaint to be true. *Mitchell* v. *Lawson Milk Co.* (1988), 40 Ohio St. 3d 190, 192, 532 N.E. 2d 753, 756. Fur-

ther, in *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753, syllabus, we held:

"In order for a court to dismiss a complaint for failure to state a claim upon which relief can be granted (Civ. R. 12(B)(6)), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. * * *" (Citation omitted.)

Considering the foregoing, the facts we must assume to be true are that appellant was employed by appellee; that pursuant to R.C. 3113.*21(D)*, the Court of Common Pleas of Butler County ordered appellee to withhold a specified amount from appellant's wages to ensure payment of appellant's support obligation; that appellee fired appellant because appellee was made subject to the court's wage withholding order; and that appellee's act of discharging appellant was intentional, malicious, and caused appellant to suffer lost wages, and mental and emotional injury.

As a consequence, R.C. 3113.*213 (D)* is at issue. R.C. 3113.213(D) provides in relevant part:

"*No employer may use an order to withhold personal earnings * * * as a basis for a discharge of*, or for any disciplinary action against, *an employee*, or as a basis for a refusal to employ a person. *The court may fine an employer who so discharges* or takes disciplinary action against *an employee*, or refuses to employ a person, *not more than five hundred dollars*." (Emphasis added.)

To begin our inquiry, we must briefly explore the legislative history leading to the enactment of R.C. 3113.213(D). In 1984, the Congress of the United States enacted the Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat.

1305, requiring states to provide for mandatory income withholding as a means of collecting child support. Among other things, this federal legislation requires a state plan for enforcement of child support obligations to contain the following:

"Provision must be made for the imposition of a *fine* against any employer who discharges from employment, refuses to employ, or takes disciplinary action against any absent parent subject to wage withholding required by this subsection because of the existence of such withholding and the obligations or additional obligations which it imposes upon the employer." (Emphasis added.) Section 666(b)(6)(D), Title 42, U.S. Code.

Subsequent to the enactment of the federal legislation, the General Assembly, in 1985, amended Ohio's child support withholding statute. As amended by Am. Sub. H.B. No. 614 (140 Ohio Laws, Part II, 4243-4245), R.C. 3113.21(J) (precursor to R.C. 3113.213[D]) provided in relevant part:

"* * * No employer may use an order to withhold personal earnings * * * as a basis for a discharge of, or for any disciplinary action against, an employee, or as a basis for a refusal to employ a person. The court may fine an employer who so discharges or takes disciplinary action against an employee, or refuses to employ a person, not more than two hundred dollars, and *may order the employer to make full restitution to the aggrieved employee, including reinstatement and back pay*." (Emphasis added.)

In 1986, the General Assembly amended R.C. 3113.21 in Am. Sub. H.B. No. 509 (141 Ohio Laws, Part III, 4786, 4798-4799), deleting the above-quoted language of R.C. 3113.21(J), and enacted R.C. 3113.213(D) pro-

viding for a fine but not the remedies of reinstatement and back pay.

Based upon the foregoing history, the court of appeals stated:

"* * * [T]he General Assembly, by clear implication, did not intend to create a civil cause of action for damages for violation of the statute. Although the General Assembly originally provided the remedy of reinstatement and back pay, the legislative history demonstrates the General Assembly, by its 1986 amendment, intended to limit the remedy available under the statute to only a $500 fine. Nowhere in the legislative history is there any indication the General Assembly intended to create a civil remedy of compensatory and punitive damages for violation of the statute."

We do not agree. It may be argued, as the court of appeals did, that the General Assembly expressed its intention to bar civil remedies for violations of R.C. 3113.213(D) by enacting the statute without the remedial provisions formerly contained in R.C. 3113.21(J). However, the *express purpose* of the 1986 legislation amending R.C. 3113.21 and enacting R.C. 3113.213(D) was "* * * to conform the existing child support enforcement withholding mechanism to certain mandates of the federal Child Support Enforcement Amendments of 1984 * * *." Am. Sub. H.B. No. 509 (141 Ohio Laws, Part III, 4725).

Federal law merely requires a provision for implementing a fine against an employer who discharges an employee on the basis of a child support wage withholding order. Section 666(b)(6)(D), Title 42, U.S. Code. The only logical inference to be drawn from the information which is available is that the General Assembly enacted R.C. 3113.213(D) without the reinstatement and back pay remedies

in order to *specifically* conform to the federal mandates, which was precisely the *stated purpose* of the enactment. Nothing in the legislation or its history indicates that it was the intent of the General Assembly to foreclose the rights of an affected *employee*.

Furthermore, it is argued that the permissive imposition of a *fine* for violation of R.C. 3113.213(D) indicates a legislative intention to foreclose all other *remedies* available to an aggrieved employee. However, such an argument is inaccurate. Imposing a fine against an employer who violates R.C. 3113.213(D) is a matter between the employer and the government. Whether a remedy is available to an aggrieved employee is a wholly separate matter. Had the General Assembly intended to bar a civil remedy to workpersons situated similarly to appellant, it certainly knew how to do so. See, *e.g.*, R.C. 4112.02(N). Additionally, we have previously declined to place substantial significance upon legislative intent deduced from legislative inaction, noting that deriving intent from " '* * * [l]egislative inaction is a weak reed upon which to lean in determining legislative intent.' " (Citation omitted.) *Oliver* v. *Kaiser Community Health Found.* (1983), 5 Ohio St. 3d 111, 115, 5 OBR 247, 250, 449 N.E. 2d 438, 441-442. The examples which follow clearly illustrate the point that providing a fine for violations of a statutory mandate may not reasonably preclude court-ordered remedies for such violations.

First, R.C. 3113.213(C) provides in pertinent part:

"The court may fine an employer not more than two hundred dollars for failure to withhold personal earnings * * * as required by an order described in division (D)(1) of section 3113.21 of the Revised Code. * * *"

Literally construed, R.C. 3113.213

(C) provides a means by which an employer may circumvent the obligations imposed upon the employer by court order. In effect, R.C. 3113.213(C) provides that employers may buy their way out of a court order leaving the court in an untenable position and totally frustrating the legislative scheme for enforcement of child support obligations. Must the court then impose a fine each week the employer refuses to comply with its order? Is the court robbed of its ability to enforce an order simply because the legislature has made provision for the imposition of a fine? Certainly, this court would not condone an absolute frustration of the legislative scheme for enforcement of policy and allow the courts of this state to be stripped of their powers to enforce an order simply because the General Assembly has made provision for the permissive imposition of a fine.

In this vein, R.C. 3113.213(C) is similar to the effect of a failure to comply with the legislative prohibitions contained in R.C. 3113.213(D). R.C. 3113.213(D) specifically prohibits, in unambiguous terms, an employer from discharging an employee whose wages have been made subject by court order to withholding for child support. Because the General Assembly has provided for a fine for a violation of the statute does not mean that the legislature intended its policy to be ignored. To permit an employer to discharge an employee who is subject to wage withholding would be condoning the violation of a statute and the frustrating of a court order — all by simply paying a small fine which *may* (or may not) be imposed by the court. Certainly this could not be the intent of the General Assembly.

Second, R.C. 2313.18 provides:

"(A) No employer shall discharge or threaten to discharge any permanent employee who is summoned to serve as a juror pursuant to Chapter 2313. of the Revised Code if the employee gives reasonable notice to the employer of the summons prior to the commencement of the employee's service as a juror and if the employee is absent from employment because of the actual jury service.

"(B) Whoever violates this section shall be punished as for a contempt of court pursuant to Chapter 2705. of the Revised Code."

If a person who has been called to jury service fails to attend and serve as a juror, such person is subject to arrest and punishment for contempt pursuant to R.C. 2313.30. A fine may also be imposed for failure to attend pursuant to R.C. 2313.29.

The question thus arises, must a person called to execute the mandated duties of a citizen choose between the possible termination of employment on the one hand, or be punished for failure to execute that mandated civil obligation on the other hand? The question would seem to answer itself. Jury service is a societal obligation imposed upon persons by the General Assembly and enforced by the courts. Frustration of the administration of justice should not be tolerated by allowing an employer to discharge an individual called to jury service simply because it may be economically attractive for the employer to do so. The courts must be empowered not only to punish, but to remedy such public policy violations.

Third,[1] R.C. 2301.39(B) prohibits an employer from discharging an employee on the basis of, *inter alia*, garnishment of the employee's wages.

---

[1] There are numerous other illustrations found throughout the Revised Code. See, *e.g.*, R.C. 4115.10(A) and 4115.99(B) (prevailing wage); R.C. 5903.08 and 5903.99 (military service).

If an employee, in violation of R.C. 2301.39(B), is discharged, R.C. 2301.99 provides for a fine of $50 to $200 and imprisonment for a period of ten to thirty days. Could it be that a fine of $50 and a ten-day jail term (either or both of which may be suspended) buy the employer the right to violate the statute and leave the affected employee without any recourse?

If we must accept, in the foregoing illustrations or in the case *sub judice*, that the General Assembly intended to bar a civil remedy for violations of the statutory prohibition simply because that body has made provision for imposition of a fine, then we would be drawn to agreeing with Mr. Bumble in Dickens' Oliver Twist when he said: " '* * * [i]f the law supposes that * * * the law is a ass — a idiot. * * *'."[2] Obviously, the law should never be reduced to that status — at least not with our concurrence and consent!

Accordingly, this court should not condone the frustration of a court's order to withhold earnings for the payment of child support. The mandatory withholding law is an obligation created by the General Assembly and enforced by the courts. To allow an employer to bypass the obligation and escape a court's order to withhold would undermine the entire child support enforcement mechanism enacted by the General Assembly.

By enacting R.C. 3113.213(D), the General Assembly has set forth a policy which prohibits the use of a child support withholding order as a basis for discharging an employee. As noted by the court of appeals, R.C. 3113.213(D) was designed to protect children who are the recipients or beneficiaries of child support. To disallow a civil remedy for violations of R.C. 3113.213(D) frustrates the policy and purposes of the statute. Therefore, the only logical conclusion is that the General Assembly did not intend to foreclose a civil *remedy* for violations of R.C. 3113.213(D).

Appellant argues that public policy requires that he be given a common-law cause of action in wrongful discharge to redress a violation of R.C. 3113.213(D). Appellee argues that our pronouncement in *Phung* v. *Waste Management, Inc.* (1986), 23 Ohio St. 3d 100, 23 OBR 260, 491 N.E. 2d 1114, runs contrary to appellant's proposition.

In *Phung*, we held that public policy does not require that there be an exception to the employment-at-will doctrine, absent a sufficiently clear public policy warranting the creation of a cause of action. *Id.* at 102, 23 OBR at 262, 491 N.E. 2d at 1116-1117. In the case at bar, the General Assembly has enacted a statute prohibiting the specific conduct engaged in by appellee. Such pronouncement provides the clearly sufficient authority to warrant the exception referenced in *Phung*.

We believe that the time has come for Ohio to join the great number of

---

[2] " 'That is no excuse,' replied Mr. Brownlow. 'You were present on the occasion of the destruction of these trinkets, and, indeed are the more guilty of the two, in the eye of the law; for the law supposes that your wife acts under your direction.'

" 'If the law supposes that,' said Mr. Bumble * * * 'the law is a ass — a idiot. If that's the eye of the law, the law's a bachelor; and the worst I wish the law is, that his eye may be opened by experience — by experience.' " Charles Dickens, Oliver Twist, ch. 51, in I, The Works of Charles Dickens (London, New York: The Waverly Book Company, Cassell & Company, Limited, 1890), pp. 317-318. E. C. Gerhard, ed., Quote It! Memorable Legal Quotations (New York, New York: Clark Boardman Co., Ltd. 1969) 334.

states which recognize a public policy exception to the employment-at-will doctrine.[3] The General Assembly has expressed its will that employers be prohibited from discharging employees for the reason upon which appellant bases his cause of action. It is our job to enforce, not frustrate, that policy.

Therefore, we hold that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute.

This holding is not some great new revelation for this court. In *Hazlett* v. *Martin Chevrolet, Inc.* (1986), 25 Ohio St. 3d 279, 25 OBR 331, 496 N.E. 2d 478, we dealt with the question of whether drug addiction and alcoholism are "handicaps" as defined in R.C. 4112.01(A)(13) and answered that question in the affirmative. *Id.* at syllabus. Discrimination on the basis of handicaps is prohibited pursuant to R.C. 4112.02(A). Hazlett was summarily terminated when he requested temporary leave from employment for treatment of his addiction. *Id.* at 279, 25 OBR at 331, 496 N.E. 2d at 479. In *Hazlett,* we stated:

"* * * Where, as in the instant case, an employee is discharged in contravention of statute on the basis of a handicap, the consequence of such action resulting in a judgment for the employee is appropriate." *Id.* at 281, 25 OBR at 333, 496 N.E. 2d at 480.

In *Hazlett,* as in the case now before us, an employer terminated an employee for a reason prohibited by statute. When such a breach occurs, a civil cause of action will lie for an unlawful termination.

We recognize that our holding in the case at bar has some impact on our pronouncement in *Fawcett* v. *G.C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144. In *Fawcett,* we *rejected* the following proposition:

"* * * [T]he right of employers 'to terminate employment at will for *any cause,* at any time whatever, is not absolute, but limited by principles which protect persons from gross or reckless disregard of their rights and interests, wilful, wanton or malicious acts or acts done intentionally, with insult, or in bad faith.'" (Emphasis added.) *Id.* at 249, 75 O.O. 2d at 293-294, 348 N.E. 2d at 147.

Reading *Fawcett,* and a number of other cases both preceding and postdating *Fawcett* together, it is clear that the employment-at-will doctrine in Ohio is today alive and well in an employment relationship which is, *without more,*[4] clearly at will. Such a relationship permits termination of employment for no cause or for "any cause" which is not unlawful, at any time and regardless of motive. *Id.* See, also, *Phung, supra,* at 102, 23 OBR at 261-262, 491 N.E. 2d at 1116. Accepting this, henceforth, the right of employers to terminate employment at will for "any cause" no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy. *Fawcett* is, therefore, modified accordingly.

Today, we only decide the question

[3] According to a recent survey, thirty-nine states have recognized a public policy exception to the doctrine of employment at will. See Individual Employment Rights Manual (BNA Lab. Rel. Rptr. [1989]), Sections 505:51 to 505:912. Noteworthy is the fact that Ohio is included in this list of states recognizing a public policy exception.

See, *e.g., Goodspeed* v. *Airborne Express, Inc.* (Feb. 11, 1985), Clinton App. No. CA84-03-008, unreported.

[4] See, further, *e.g., Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, and *Helmick* v. *Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131, 543 N.E. 2d 1212.

of a public policy exception to the employment-at-will doctrine based on violation of a specific statute. This is not to say that there may not be other public policy exceptions to the doctrine but, of course, such exceptions would be required to be of equally serious import as the violation of a statute.

In Ohio, a cause of action for wrongful discharge in violation of public policy may be brought in tort. Therefore, appellant has stated a cause of action for wrongful termination violative of R.C. 3113.213(D).

In a quote attributed to him, Clarence Seward Darrow said, "[l]aws should be like clothes. They should be made to fit the people they are meant to serve."[5] Children and employees, as others, are entitled to such protections.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

SWEENEY, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

MOYER, C.J., dissenting. When the General Assembly amended R.C. 3113.21(J) to remove the requirement that an employer reinstate an employee with back pay where an employer had improperly discharged such employee contrary to R.C. 3113.21(J), it made a clear policy statement with respect to the law on this issue. The question is not whether we agree that a $500 fine is appropriate or inappropriate. The question is who has the authority to define the sanction.

It would be difficult to find a better example of a blurring of the distinction between legislative and judicial functions than the majority opinion in this case. The judgment of the court of appeals which properly applied the will of the General Assembly should be affirmed.

HOLMES, J., dissenting. The majority of this court again bashes the long-standing employment-at-will doctrine in its continuing desire to annihilate it. In arriving at its predetermined result here, the majority has not only overlooked the legislative history of the pertinent code section, R.C. 3113.213, but also has overridden such legislation and its history.

R.C. 3113.213(D) lists the following remedy when an employer terminates an employee solely because of a child support wage assignment:

"No employer may use an order to withhold personal earnings described in division (D)(1) of section 3113.21 of the Revised Code, as a basis for a discharge of, or for any disciplinary action against, an employee, or as a basis for a refusal to employ a person. The court may fine an employer who so discharges or takes disciplinary action against an employee, or refuses to employ a person, not more than five hundred dollars."

It should be very obvious that nowhere on the face of this statute is there created a civil cause of action in favor of a terminated employee for its violation. But yet the majority here writes in that which had consciously been left out of this statute by the General Assembly.

A review of the legislative history of the statute supports the proposition that appellant may assert no cause of

---

[5] Bradley, Daniels & Jones, The International Dictionary of Thoughts (J.G. Ferguson Pub. Co. 1969) 429.

action against his former employer. The General Assembly enacted R.C. 3113.213 in response to the Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat. 1305. This federal legislation requires every state to provide for mandatory income withholding as a means of collecting child support.

In Section 666(b)(6)(D), Title 42, U.S. Code, the government mandates that:

"Provision must be made for the imposition of a fine against any employer who discharges from employment, refuses to employ, or takes disciplinary action against any absent parent subject to wage withholding required by this subsection because of the existence of such withholding and the obligations or additional obligations which it imposes upon the employer."

To comply with this directive, the General Assembly in 1984 amended the child support withholding statute. The remedial provision formerly read as follows:

"* * * No employer may use an order to withhold personal earnings issued under division (B)(1)(a) or (2)(a)(i) of this section as a basis for a discharge of, or for any disciplinary action against, an employee, or as a basis for a refusal to employ a person. The court may fine an employer who so discharges or takes disciplinary action against an employee, or refuses to employ a person, not more than two hundred dollars, and *may order the employer to make full restitution to the aggrieved employee, including reinstatement and back pay.*" (Emphasis added.) (140 Ohio Laws, Part II, 4245.)

In 1986, the General Assembly again amended the statute to delete the language italicized above. (141 Ohio Laws, Part III, 4786.) The legislature enacted R.C. 3113.213, which provides only for imposition of a $500 fine. (141 Ohio Laws, Part III, 4796.)

In affirming dismissal of appellant's complaint, the court of appeals succinctly stated the conclusion to be drawn by these Acts of the General Assembly:

"The preceding discussion of the legislative history behind R.C. 3113.213 reveals that the General Assembly, by clear implication, did not intend to create a civil action for damages for violation of the statute. Although the General Assembly originally provided the remedy of reinstatement and back pay, the legislative history demonstrates the General Assembly, by its 1986 amendment, intended to limit the remedy available under the statute to only a $500 fine. Nowhere in the legislative history is there any indication the General Assembly intended to create a civil remedy of compensatory and punitive damages for violation of the statute."

In determining if a cause of action is available when the statute in question is silent on the matter, a court must inquire whether the General Assembly, by "clear implication," intended to create a cause of action for damages as a remedy for violation of the statute. *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 249, 75 O.O. 2d 291, 293, 348 N.E. 2d 144, 147. Given the legislative history of R.C. 3113.213, appellant clearly has no cause of action against appellee.

Although *Fawcett* clearly and unequivocally pronounced the standards for this court's review of statutes in order to determine legislative intent in regard to a cause of action for damages being stated, this majority now bends the meaning of *Fawcett* to meet its own desires.

Both the court of common pleas and the Twelfth District Court of Ap-

peals correctly construed R.C. 3113.213 as not authorizing a civil remedy in damages for an employee who is terminated solely because of a child-support-withholding order. The legislative history of R.C. 3113.213(D), as evidenced by its predecessor R.C. 3113.21(J), clearly indicates that the statute allowed a remedy for reinstatement and back pay until 1986 when the predecessor statute was amended to delete this remedy and make a $500 fine of the employer the sole remedy. The General Assembly has clearly expressed its intent that no cause of action for compensatory and punitive damages is available to an employee for violation of the statute. Furthermore, both of the lower courts correctly found that no cause of action exists in Ohio for the tort of wrongful discharge in the absence of specific statutory authority. Ohio follows the doctrine of at-will employment which allows termination for any cause not contrary to law. Appellee's motion to dismiss for failure to state a claim was proper as to a cause of action for the tort of wrongful discharge. The decision of the court of appeals should be affirmed.

WRIGHT, J., dissenting. I agree with the content of the Chief Justice's dissent and the thrust of the remarks made by my colleague Justice Holmes. I am mindful of the legitimate concerns of an employee who faces arbitrary and improper discharge and certainly do not question the wisdom of R.C. 3113.213(D) and its predecessor. However, I think it is the task of the General Assembly to create a public policy exception to the doctrine of employment at will coupled with an appropriate sanction. For us to take over this task is wholly inappropriate judicial discourse.

The reason I write a dissent in addition to those of my other two colleagues is that I am troubled by the third paragraph of the syllabus in this opinion, which is an expansion of tort remedies to the employment context. This sort of approach has potentially enormous consequences for the stability of the business community and our state's economy as a whole. Recently, in a scholarly and lengthy opinion, the Supreme Court of California discarded the tort approach to common-law wrongful discharge in *Foley* v. *Interactive Data Corp.* (1988), 47 Cal. 3d 654, 254 Cal. Rptr. 211, 765 P. 2d 373. In recent cases such as *Kelly* v. *Georgia-Pacific Corp.* (1989), 46 Ohio St. 3d 134, 545 N.E. 2d 1244, we have seemingly, almost by accident, broadened the common-law remedy pertaining to wrongful discharge. Some of this language may lead to unintended consequences and visit both the employer *and employee* with the worst of all possible worlds by way of groundless litigation. In the words of Professor Gould:

"* * * [E]mployers are subject to volatile and unpredictable juries that frequently act without regard to legal instructions. Moreover, the employees who benefit are few and far between, first, because of the difficulties involved in staying the course of a lengthy and expensive judicial process, and second, because of the limitations inherent in the legal doctrines adopted by the courts." Gould, Stemming the Wrongful Discharge Tide: A Case for Arbitration (1987/1988), 13 Emp. Rel. L. J. 404, 413.

I am hopeful the Bar will treat this case as an anomaly. However, I fear that this sort of result can only precipitate a situation where the Ohio General Assembly will be forced to reverse our actions by legislative fiat.