While I concur in the decision, I write separately to express my concern that neither the General Assembly nor the Supreme Court has provided a remedy for the violation of R.C. 2935.03.
Officer Pitchmann, apparently on routine patrol and not associated with the accident investigation being undertaken by Officers Zacharyasz and Janowski, appears to have overheard radio traffic advising that an unknown person had transported the driver of the Chrysler, who was described, from the accident scene to I-71 and Pearl Road in Middleburg Heights, almost 5 miles from the scene of the accident and approximately 3,000 feet north of the Strongsville-Middleburg Heights border. He later overheard a Middleburg Heights police radio dispatch, over his police scanner, ordering Middleburg Heights officers to a Sunoco gas station at Fowles and Pearl Roads to investigate a call that an intoxicated man fitting the description of the Chrysler driver, claimed to have been robbed at a Strongsville motel. Pitchmann, suspecting that the Middleburg Heights victim was the Chrysler driver, advised both Janowski and Zacharyasz and Middleburg Heights that he was going to investigate.
It is apparent Pitchmann went outside his jurisdiction because of his suspicion that this "robbery victim" was the driver of the Chrysler and that he was not in "hot pursuit." At the Sunoco station, in the presence of two Middleburg Heights officers and another Strongsville officer, Pitchmann spoke with Bostwick, had radio communications with Janowski through which he could connect Bostwick to physical evidence in the Chrysler, gave the HGN test through which he determined that Bostwick was under the influence of alcohol, placed him under arrest, read Bostwick his Miranda rights, and took him to the Strongsville Police Department. Through the arrest, Pitchmann was able to obtain from Bostwick the keys to the Chrysler, cigars and other items used to prove Bostwick's operation of the Chrysler at the time of the crash.
If the exclusionary rule cannot be applied to violations of R.C. 2935.03, then there is no remedy whatsoever to those harmed by violation of that statute. While I agree with the statement inState v. Brown (C.C. 1993), 64 Ohio Misc.2d 41, 43, 639 N.E.2d 1268,1269, that the lack of remedy essentially gives all law enforcement officers statewide jurisdiction, I cannot agree that the solution to this problem is in limiting Kettering v. Hollen (1980),64 Ohio St.2d 232, 416 N.E.2d 598, to its "precise syllabus," as suggested in Brown. Despite the unfortunate syllabus in Kettering, that made reference to a "hot pursuit" chase, the text of the opinion unavoidably states that the constitutionally-based exclusionary rule is not applicable to statutory violations, and that evidence obtained as a result of a statutory violation will not be excluded absent a statutory mandate. Id., at 234-35, 416 N.E.2d at 600.
Because the Ohio Supreme Court has refused to fashion a remedy for violation of the statute, any law enforcement officer can make an arrest in any jurisdiction without fear of consequences. Where the General Assembly has failed to do so, a court has the authority to impose an appropriate remedy for a statutory violation. Greeleyv. Miami Valley Maintenance Contractors, Inc. (1990), 49 Ohio St.3d 228,232-33, 551 N.E.2d 981, 985-86. Furthermore, as Section 16, Article I of the Ohio Constitution guarantees that remedies will be available in its courts, I believe that the Ohio Supreme Court has not only the authority, but the duty, to fashion a meaningful remedy for an unlawful extraterritorial arrest. Nevertheless, although I believe that excluding evidence is an appropriate remedy for violation of R.C. 2935.03, I am unable to suggest that this court has the power to do so in the face of current precedent.