[Cite as *Miracle v. Ohio Dept. of Veterans Servs.*, 2018-Ohio-819.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| James Miracle, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-885 |
| v. | : | (Ct. of Cl. No. 2016-537) |
| The Ohio Department of Veterans Services et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on March 6, 2018

**On brief:** *Adams & Liming LLC*, and *Sharon Cason-Adams*, for appellant. **Argued:** *Sharon Cason-Adams*.

**On brief:** *Michael DeWine*, Attorney General, *Lee Ann Rabe* and *Emily Simmons Tapocsi*, for appellees. **Argued:** *Lee Ann Rabe*.

APPEAL from the Court of Claims of Ohio

KLATT, J.

{¶ 1}  Plaintiff-appellant, James Miracle, appeals a judgment of the Court of Claims of Ohio that dismissed his action against defendants-appellees, the Ohio Department of Veterans Services ("ODVS") and the Office of the Governor. For the following reasons, we reverse that judgment and remand this case to the trial court for further proceedings.

{¶ 2}  On July 14, 2016, Miracle filed suit against defendants, asserting claims for wrongful discharge in violation of public policy. Miracle's claims arose out of the

termination of his employment as the administrative officer 2/facilities maintenance supervisor at the Sandusky Domiciliary, an ODVS facility. In his complaint, Miracle alleged that, prior to his hiring, he had advised Michel Oppy, the then superintendent of the Ohio Veterans Home at Sandusky, and John Cook, a deputy director of ODVS, of a prior adverse incident in his job history. Miracle explained that the Ohio Department of Rehabilitation and Correction had fired him from his position as building construction superintendent at the Mansfield Correctional Institution after an investigation into the escape of a prisoner. Oppy and Cook both assured Miracle that the termination would not pose a problem.

{¶ 3} Miracle began his employment with ODVS on February 23, 2015. In a job review Miracle received on June 9, 2015, Miracle attained "meets expectations" or "exceeds expectations" ratings in each category. However, six days later, ODVS' human resource director informed Miracle that ODVS was terminating his employment. When Miracle asked the human resource director to explain the reason for his discharge, she told him that ODVS "was moving in a different direction" and ODVS was "not obligated to give [him] a reason" because he was only a probationary employee. (Compl. at ¶ 36.)

{¶ 4} Miracle later learned that Jai Chabria, then a senior advisor for the governor, had ordered ODVS to fire him. Apparently, Chabria wanted Miracle discharged to end the negative press his hiring had garnered from the Sandusky media.[1]

{¶ 5} Miracle's complaint asserted three claims for wrongful discharge in violation of public policy: (1) defendants violated the clear public policy, derived from R.C. 124.27(B), in favor of retaining probationary employees who have satisfactorily performed their duties; (2) defendants violated the clear public policy, derived from R.C. 124.56, prohibiting the abuse of the power to remove a civil service employee; and (3) defendants violated the clear public policy, derived from R.C. 124.34 and the Fourteenth Amendment of the United States Constitution, favoring public employees' exercise of their constitutional and statutory rights. In addition to pleading these three claims, Miracle also asked the trial court to determine whether Chabria was entitled to immunity under R.C. 9.86.

---

[1] As this appeal arises from the grant of a Civ.R. 12(B)(6) motion to dismiss, we draw the foregoing facts from the complaint.

{¶ 6} Rather than filing an answer to the complaint, defendants moved for dismissal under Civ.R. 12(B)(6). The trial court granted that motion in a judgment dated November 22, 2016.

{¶ 7} Miracle now appeals the November 22, 2016 judgment, and he assigns the following errors:

> 1. The trial court erred when it dismissed Appellant's Complaint for Failure to State a Claim upon Which Relief May be granted, pursuant to Civ. R. 12(B)(6).
>
> 2. The trial court erred in determining that no clear public policy emanates from Ohio Revised Code § 124.27.
>
> 3. The trial court erred in determining that Appellant could not establish the jeopardy element of a wrongful discharge claim arising out of the public policy articulated in Ohio Revised Code §124.56.
>
> 4. The lower court erred when it held that it did not have authority to make an immunity determination regarding Jai Chabria. Appellant did not fail to state a claim for relief arising under State law and if permitted to proceed against Chabria personally, in a Court of Common Pleas, would have additional claims to pursue against him.

{¶ 8} We will address Miracle's first three assignments of error together. By these assignments of error, Miracle argues that the trial court erred in dismissing his claims pursuant to Civ.R. 12(B)(6). A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. In construing a complaint upon a Civ.R. 12(B)(6) motion, a court must presume that all factual allegations in the complaint are true and make all reasonable inferences in the plaintiff's favor. *Id.* at ¶ 12; *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, ¶ 14. " '[A]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.' " *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 5, quoting *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144 (1991). Appellate court review of a trial court's decision to dismiss a claim pursuant to Civ.R. 12(B)(6) is de novo. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, ¶ 12.

{¶ 9} Under the employment-at-will doctrine, an employer may terminate at-will employment at any time, for any reason. *Collins v. Rizkana*, 73 Ohio St.3d 65, 67-68 (1995). However, the Supreme Court of Ohio has recognized an exception to this doctrine: an employer who discharges an employee for reasons that contravene clear public policy is subject to an action for damages. *Id.* at 68-69; *Greeley v. Miami Valley Maintenance Contrs.*, 49 Ohio St.3d 228 (1990), paragraphs one and two of the syllabus. To prevail on a claim for wrongful discharge in violation of public policy, a plaintiff must prove: (1) a clear public policy exists and is manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the clarity element), (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element), (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and (4) the employer lacked an overriding business justification for the dismissal (the overriding-justification element). *Collins* at 69-70. The clarity and jeopardy elements, which involve relatively pure legal and policy questions, present questions of law. *Id.* at 70. The causation and overriding-justification elements present questions of fact. *Id.*

{¶ 10} Here, defendants argue that Miracle's first claim for wrongful discharge fails because Miracle did not establish the existence of a clear public policy to support the claim. To satisfy the clarity element of a claim for wrongful discharge, "a terminated employee must articulate a clear public policy by citation to specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 24. Relying on R.C. 124.27(B), Miracle stated in his complaint that "there exists a clear public policy in favor of retaining probationary employees who are satisfactorily performing their duties and against arbitrary termination of such employees." (Compl. at ¶ 48.) In other words, Miracle derived from R.C. 124.27 a clear public policy against the discharge of civil service employees who provide satisfactory service during the probationary period.

{¶ 11} In moving for dismissal of the first claim, defendants ignored the public policy Miracle stated in his complaint. Defendants, instead, argued that Miracle claimed that R.C. 124.27 established a clear public policy against *any* discharge of probationary employees in the service of the state. The trial court accepted defendants'

mischaracterization of Miracle's claim, and it analyzed whether R.C. 124.27 manifested a clear public policy precluding the discharge of any probationary employee. In doing so, the trial court erred. The trial court was required to determine whether the clear public policy as articulated in the complaint, not in defendants' motion, was apparent in R.C. 124.27. *See White v. Sears, Roebuck & Co.*, 163 Ohio App.3d 416, 2005-Ohio-5086, ¶ 14 (10th Dist.). Accordingly, we sustain Miracle's second assignment of error.

{¶ 12} With regard to Miracle's second claim for wrongful discharge, defendants conceded for purposes of their motion to dismiss that Miracle stated a clear public policy. Thus, defendants admitted that R.C. 124.56 expressed a clear public policy "prohibiting the abuse of power by 'any officer, board, commission, head of a department, or person' who possesses the power to remove a civil service employee." (Compl. at ¶ 57, quoting R.C. 124.56.) Assuming arguendo that such a clear public policy exists, defendants argued that Miracle failed to allege in his complaint that ODVS violated that policy.

{¶ 13} The trial court interpreted defendants' argument as an attack on the jeopardy element. We disagree. To satisfy the jeopardy element, a plaintiff must show that the clear public policy at issue is at risk if the employer is permitted to discharge employees in circumstances like those underlying the plaintiff's discharge. *Collins*, 73 Ohio St.3d at 70. Because defendants moved for a dismissal under Civ.R. 12(B)(6), the facts alleged in the complaint determine the circumstances of discharge. *See Orders v. State Teachers Retirement Sys.*, 10th Dist. No. 15AP-907, 2016-Ohio-3345, ¶ 16 (holding that a court must confine its consideration to the allegations contained in the complaint when determining a Civ.R. 12(B)(6) motion). Thus, in this case, the operative question is whether the discharge of probationary civil service employees who provide satisfactory service would jeopardize the clear public policy against the abuse of the power to remove employees. Rather than addressing that issue, defendants instead argued two different points.

{¶ 14} First, defendants contended that, because R.C. 124.56 does not provide a private right of action, Miracle cannot assert a claim for wrongful discharge based on the public policy underlying the statute. Second, defendants argued that Miracle failed to aver in his complaint that his direct employer—ODVS—violated the clear public policy. Defendants maintained that, in order to assert a wrongful discharge claim, Miracle had to direct his claim at ODVS, not the Office of the Governor.

{¶ 15} We find both of defendants' arguments unavailing. Defendants' first argument fails to recognize that, if Miracle can prove the elements of a claim for wrongful discharge, he can recover damages on that claim despite the lack of a private remedy in the statute itself. *See Greely*, 49 Ohio St.3d at 231-32 (rejecting the argument that the lack of remedial provisions in a statute precludes a plaintiff from asserting a common-law claim for wrongful discharge in violation of public policy based on the statute); *accord Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, ¶ 23 ("In *Greeley*, the statute involved did not provide any private remedies to the employee, and so a claim at common law was recognized."). Indeed, "[r]ecognizing a common-law claim for wrongful discharge is more likely appropriate if the statute or policy does not itself provide a remedy or private cause of action." *Kirk v. Shaw Environmental, Inc.*, N.D.Ohio No. 1:09-cv-1405, 2010 U.S. Dist. LEXIS 31759, 2010 WL 1387887 (Mar. 31, 2010).

{¶ 16} Defendants' second argument misconstrues the text of the complaint. In pleading his second claim, Miracle alleged:

> 59. Jai Chabria, in his capacity as Senior Advisor to the Governor of the State of Ohio, and those persons acting at his direction, abused their authority, when they terminated Plaintiff despite the fact that he was satisfactorily performing the duties of his position.
>
> 60. Defendants abused their authority, when they terminated Plaintiff despite the fact that Plaintiff was satisfactorily performing the duties of his position.
>
> 61. Political optics are not sufficient grounds for termination.
>
> 62. If this decision is allowed to stand, the clear public policy prohibiting abuse of power will be jeopardized.

(Compl. at ¶ 59-62.) Given these allegations, we conclude that Miracle sufficiently stated wrongful action on the part of both defendants. Miracle alleged that both defendants' actions—not just Chabria's actions—resulted in the termination of his employment.

{¶ 17} In its determination of defendants' challenge to the second claim, the trial court reasoned that Miracle could not establish the jeopardy element because he conceded that the governor had the authority to order the termination of his employment. However, as we stated above, the jeopardy element turns on whether the discharge of probationary

civil service employees who provide satisfactory service would compromise the clear public policy against the abuse of the power to remove employees. The fact that the governor has the authority to discharge probationary civil service employees, including Miracle, does not resolve that issue. Accordingly, we sustain Miracle's third assignment of error.

{¶ 18} Although Miracle asserted three claims for wrongful discharge in violation of public policy, on appeal, he only argues error regarding two of those claims. Miracle, thus, has tacitly abandoned his third claim for wrongful discharge (based on R.C. 124.34 and the Fourteenth Amendment to the United States Constitution). Accordingly, we sustain Miracle's first assignment of error to the extent that it asserts error in the dismissal of his first and second claims, but overrule it to the extent that it asserts error in the dismissal of his third claim.

{¶ 19} By Miracle's fourth assignment of error, he argues that the trial court erred in refusing to determine Chabria's immunity. The refusal resulted from the trial court's conclusion that Miracle failed to state any claim in his complaint. As we have found that the trial court erred in dismissing two of Miracle's claims, we also find that the trial court erred in its denial of the immunity determination. Accordingly, we sustain Miracle's fourth assignment of error.

{¶ 20} For the foregoing reasons, we sustain in part and overrule in part Miracle's first assignment of error, and we sustain Miracle's second, third, and fourth assignments of error. We remand this case to the Court of Claims of Ohio for further proceedings consistent with law and this decision.

*Judgment reversed; case remanded.*

BROWN, P.J., and BRUNNER, J., concur.