**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Miracle v. Ohio Dept. of Veterans Servs.,* **Slip Opinion No. 2019-Ohio-3308.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3308

MIRACLE, APPELLEE, *v.* OHIO DEPARTMENT OF VETERANS SERVICES ET AL.,
APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Miracle v. Ohio Dept. of Veterans Servs.,* Slip Opinion No. 2019-Ohio-3308.]**

*Torts—Wrongful discharge—Neither R.C. 124.27(B) nor R.C. 124.56 expresses a clear public policy that would provide basis for a claim under* Greeley v. Miami Valley Maintenance Contrs., Inc., *by civil-service employees terminated during their probationary period—Court of appeals' judgment reversed and Court of Claims' order dismissing former employee's complaint reinstated.*

(No. 2018-0562—Submitted April 23, 2019—Decided August 20, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 16AP-885,
2018-Ohio-819.

_____

**FRENCH, J.**

{¶ 1} In *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), we recognized a public-policy exception to the employment-at-will doctrine and held that an employee may maintain a common-law tort action when the employee has been discharged or disciplined for a reason prohibited by statute, *id*. at paragraph one of the syllabus. This discretionary appeal requires us to determine whether Ohio's civil-service laws express a public policy that would give rise to *Greeley* claims by public employees terminated during their probationary period.

{¶ 2} Appellee, James Miracle, filed a complaint alleging that his former employer, the Ohio Department of Veterans Services, wrongfully terminated him during his probationary period at the direction of the governor's office. The Tenth District Court of Appeals unanimously reversed the trial court's dismissal of Miracle's complaint under Civ.R. 12(B)(6). Appellants, the department and the governor's office (collectively, "the state"), have appealed the Tenth District's judgment.

{¶ 3} We conclude that R.C. 124.27(B) and 124.56, the civil-service statutes invoked by Miracle, do not express a clear public policy providing the basis for a wrongful-discharge claim by a probationary employee. We therefore reverse the judgment of the court of appeals and reinstate the trial court's order dismissing Miracle's complaint.

**FACTS AND PROCEDURAL BACKGROUND**

{¶ 4} Miracle's claims arise from the termination of his employment as an administrative officer and facilities manager of the veterans' home located in Sandusky, Ohio. As alleged in Miracle's complaint, prior to his hiring in 2015, Miracle had advised the superintendent of the Sandusky Veterans Home, known as the Sandusky Domiciliary, and a deputy director of the Department of Veterans Services of his adverse job history at the Ohio Department of Corrections. Miracle

had previously worked as a building-construction superintendent at the Mansfield Correctional Institution. In July 2013, an inmate escaped from the Mansfield facility. After an investigation of the incident, the Department of Corrections terminated Miracle for failing to secure tools and for falsifying tool-inventory documents. Pending Miracle's appeal of his termination before the State Personnel Board of Review ("SPBR") and after the negotiation of a settlement, the Department of Corrections reinstated Miracle to a position at a different correctional institution.

{¶ 5} According to Miracle, the superintendent of the Sandusky Domiciliary assured Miracle that his adverse job history would not pose a problem. Miracle began working in February 2015 as a probationary employee of the Department of Veterans Affairs. At his June 9, 2015 performance review, Miracle received ratings of "meets expectations" or "exceeds expectations" in each category. Six days later, during Miracle's probationary period, the department's human-resources director informed Miracle that the department was terminating his employment because it "was moving in a different direction." The department declined to provide any additional information. Miracle later learned that Jai Chabria, a senior advisor to Governor John Kasich, had directed the superintendent to terminate Miracle because of negative press about Miracle's alleged involvement in the Mansfield inmate escape.

{¶ 6} Following his termination, Miracle filed a four-count complaint in the Ohio Court of Claims against the Department of Veterans Services and the governor's office. Count One alleges that Miracle's termination violated the public policy articulated in R.C. 124.27(B) in favor of retaining probationary employees who have satisfactorily performed their duties. Count Two asserts a claim for wrongful discharge in violation of the public policy articulated in R.C. 124.56. That statute provides for an investigation and possible removal of an appointing authority who has appointed, removed or suspended an employee in violation of

R.C. Chapter 124. Count Three asserts wrongful discharge in violation of the procedural protections guaranteed by R.C. 124.34 and the Fourteenth Amendment to the United States Constitution. Count Four asks for a determination that Chabria is not entitled to immunity under R.C. 9.86.

{¶ 7} The state filed a motion to dismiss Miracle's complaint under Civ.R. 12(B)(6) for failure to state a claim. The trial court granted the motion.

{¶ 8} On appeal, the Tenth District Court of Appeals reversed and remanded, reinstating the wrongful-discharge claims Miracle asserted in Counts One and Two based on R.C. 124.27(B) and 124.56, respectively. The court also reinstated Miracle's request for an immunity determination in Count Four, which the trial court had dismissed for lack of an underlying state-law claim. But the court determined that Miracle had abandoned Count Three's wrongful-discharge claim for failure to assert any related assignment of error.

{¶ 9} We accepted the state's discretionary appeal, 153 Ohio St.3d 1402, 2018-Ohio-2380, 100 N.E.3d 422, which presents two propositions of law:

1. A *Greeley* tort is not available under R.C. 124.27 or 124.56 and, more generally, statutes about public employment ordinarily should not support *Greeley* claims.

2. Only the employer is subject to a *Greeley* claim.

{¶ 10} Miracle has not filed a cross-appeal challenging the court of appeals' holding that he abandoned his wrongful-discharge claim based on procedural due process. The only claims at issue in this appeal are Miracle's wrongful-discharge claims based on R.C. 124.27(B) and 124.56 and his request for an immunity determination.

4

## ANALYSIS

{¶ 11} The traditional rule in Ohio is that a general or indefinite hiring is terminable at the will of either the employer or the employee, for any cause or no cause. *Collins v. Rizkana*, 73 Ohio St.3d 65, 67, 652 N.E.2d 653 (1995). The tort of wrongful discharge in violation of public policy is an exception to this default rule. We first recognized the tort in 1990, holding that "[p]ublic policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley*, 49 Ohio St.3d 228, 551 N.E.2d 981, at paragraph one of the syllabus. Since *Greeley*, we have recognized that sources of public policy other than statutes may provide the basis for a wrongful-discharge claim. *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus.

{¶ 12} To succeed on a claim for wrongful discharge in violation of public policy, a plaintiff must establish four elements: (1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law ("the clarity element"), (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy ("the jeopardy element"), (3) the plaintiff's dismissal was motivated by conduct related to the public policy ("the causation element"), and (4) the employer lacked an overriding legitimate business justification for the dismissal ("the overriding-justification element"). *Collins* at 69-70. The clarity and jeopardy elements involve legal questions that the court determines. *Id.* at 70. The causation and overriding-justification elements involve factual issues that the finder of fact decides. *Id.*

### The clarity element

{¶ 13} Miracle invokes two statutes as the basis for his wrongful-discharge claims: R.C. 124.27(B) and 124.56. To determine whether these statutes express a clear public policy against termination under the circumstances alleged by Miracle,

our analysis focuses on the intent of the General Assembly. *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 11. Our examination of the language and purposes of the relevant statutes governing civil-service employment leads us to conclude that neither R.C. 124.27(B) nor R.C. 124.56 expresses a clear public policy that would provide the basis for a *Greeley* claim by civil-service employees terminated during their probationary period.

*R.C. 124.27(B)*

{¶ 14} R.C. 124.27(B) governs the appointment and removal of probationary civil-service employees and provides:

> No appointment or promotion [to the classified civil service] is final until the appointee has satisfactorily served the probationary period. If the service of the probationary employee is unsatisfactory, the employee may be removed or reduced at any time during the probationary period. If the appointing authority decides to remove a probationary employee in the service of the state, the appointing authority shall communicate the removal to the director. A probationary employee duly removed or reduced in position for unsatisfactory service does not have the right to appeal the removal or reduction under section 124.34 of the Revised Code.

{¶ 15} Miracle argues that R.C. 124.27(B) expresses a clear public policy against the termination of a probationary employee for reasons other than unsatisfactory performance. The state violated that policy, Miracle contends, by terminating him despite his having received satisfactory performance reviews. We accept the factual allegations in Miracle's complaint as true and afford him all reasonable inferences from those allegations, as we must when reviewing a trial court's decision granting a Civ.R. 12(B)(6) motion to dismiss. *Volbers-Klarich v.*

6

*Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 12.

{¶ 16} We nevertheless conclude that R.C. 124.27(B) and Ohio's civil-service scheme as a whole do not express a clear public policy that would support recognizing a wrongful-discharge tort for probationary employees. The General Assembly has spoken clearly: probationary employees do not enjoy the same rights and protections afforded to tenured civil servants. Accepting Miracle's argument would contradict this legislative design by treating probationary civil-service employees the same as, if not better than, tenured civil-service employees.

{¶ 17} First, while Ohio law imposes specific restrictions on the removal from the civil service of tenured employees, it leaves the decision to remove a probationary employee to the discretion of the appointing authority. Tenured civil-service employees may not be removed except for one of the reasons specified in R.C. 124.34(A), including "incompetency," "inefficiency," "neglect of duty," and "unsatisfactory performance." "Unsatisfactory performance" includes the failure to meet established work standards, goals, and competencies, the failure to adequately perform duties, and the failure to complete a training plan or a performance-improvement plan. Ohio Adm.Code 123:1-31-05.

{¶ 18} By contrast, an appointing authority may remove a probationary employee for "unsatisfactory service." R.C. 124.27(B). Neither statute nor rule defines "unsatisfactory service." But the ordinary meaning of the word "service" connotes acting "in the interest or under the direction of others" or "for the benefit of another." *Black's Law Dictionary* 1576 (10th Ed.2014). Here, even if we accept that Miracle satisfactorily performed his workplace duties, R.C. 124.27(B) confers discretion on the appointing authority to remove a probationary employee whose continued employment would not benefit or advance the interests of the agency.

{¶ 19} We must also presume that by using the word "service" in R.C. 124.27(B) but "performance" in R.C. 124.34(A), the legislature intended to impose

different legal standards for the termination of probationary and tenured employees. *See State v. Herbert*, 49 Ohio St.2d 88, 113, 358 N.E.2d 1090 (1976) ("the use of different language gives rise to a presumption that different meanings were intended"). The General Assembly did not intend for the performance-based grounds for termination prescribed in R.C. 124.34(A) to govern the termination of probationary employees. The text of R.C. 124.27(B) does not support Miracle's argument that that statute expresses a public policy disfavoring the termination of probationary employees for reasons other than unsatisfactory performance.

{¶ 20} The General Assembly has also drawn distinctions between the posttermination remedies for probationary and tenured civil-service employees. Tenured employees have the right to appeal their removal to the SPBR. R.C. 124.34(B). Probationary employees do not. R.C. 124.27(B). But the SPBR has jurisdiction only to affirm, disaffirm or modify decisions of the appointing authority. R.C. 124.34(B). Because of this statutory limit on the SPBR's jurisdiction, certain remedies, like an award of back pay, may not be available to a tenured employee in an SPBR appeal. *State ex rel. Weiss v. Indus. Comm.*, 65 Ohio St.3d 470, 476, 605 N.E.2d 37 (1992). We would be turning R.C. Chapter 124 on its head if we were to recognize a full-blown tort remedy for probationary employees.

{¶ 21} The evolution of R.C. 124.27 (formerly R.C. 143.20) also reinforces our conclusion that R.C. 124.27(B) expresses no public policy in favor of retaining probationary employees. Since the statute's origin in 1913, the General Assembly has enacted changes expanding the removal authority of employers while reducing the procedural protections guaranteed to probationary employees. Originally, the statute allowed the removal of an employee for unsatisfactory service at the end of the probationary period, with the approval of the SPBR (formerly, the Civil Service Commission). G.C. 486-13, Am.S.B. No. 7, 103 Ohio Laws 704-705; *see State ex rel. Artman v. McDonough*, 132 Ohio St. 47, 4 N.E.2d 982 (1936), paragraph two

of the syllabus. If the appointing authority sought to remove an employee during the probationary period, the employee enjoyed the procedural protections of G.C. 486-17, the predecessor to the SPBR appeal process. G.C. 486-13; *Walton v. Montgomery Cty. Welfare Dept.*, 69 Ohio St.2d 58, 60, 430 N.E.2d 930 (1982).

{¶ 22} In 1961, the General Assembly enacted a two-tier scheme under which a probationary employee enjoyed the full appeal rights of a tenured employee during the first half of the probationary period but could be removed during the second half. Former R.C. 143.20, Am.Sub.H.B. No. 126, 129 Ohio Law 1079, 1080-1081; *see Walton* at 61. Later that same decade, the General Assembly also eliminated the requirement of SPBR approval of the removal of probationary employees. Former R.C. 143.20, Am.Sub.S.B. No. 297, 133 Ohio Laws, Part I, 811, 862.

{¶ 23} In 1998, the General Assembly took away the right to appeal to the SPBR and authorized the appointing authority to remove an employee at any time during the probationary period for unsatisfactory service. Former 124.27, Am.Sub.S.B. No. 144, 147 Ohio Laws, Part IV, 8122, 8156; *State ex rel. Rose v. Ohio Dept. of Rehab. & Corr.*, 91 Ohio St.3d 453, 457, 746 N.E.2d 1103 (2001). Recognizing a *Greeley* claim here would contravene the General Assembly's unambiguous intent, as expressed over decades of statutory amendments, to expand the appointing authority's power to remove probationary employees.

{¶ 24} For these reasons, we conclude that R.C. 124.27(B) does not express a clear public policy that would support a *Greeley* claim by a probationary civil-service employee. And because Miracle cannot satisfy the clarity element of his wrongful-discharge claim based on R.C. 124.27(B), we need not address whether his termination jeopardizes any public policy expressed in the statute. *See Painter*, 70 Ohio St.3d at 385, 639 N.E.2d 51 (dismissing *Greeley* claim for lack of clear public policy without addressing jeopardy element).

*R.C. 124.56*

{¶ 25} We turn next to Miracle's second wrongful-discharge claim. Miracle contends that the state terminated him in violation of the public policy articulated in R.C. 124.56, which prohibits the abuse of power by any person with authority to appoint or remove a civil-service employee. We disagree and conclude that R.C. 124.56 does not express any public policy that would provide the basis for a wrongful-discharge tort claim.

{¶ 26} R.C. 124.56 states:

> When the [SPBR] or a municipal or civil service township civil service commission has reason to believe that any officer, board, commission, head of a department, or person having the power of appointment, layoff, suspension, or removal, has abused such power by making an appointment, layoff, reduction, suspension, or removal of an employee under his or their jurisdiction in violation of this chapter of the Revised Code, the board or commission shall make an investigation, and if it finds that a violation of this chapter, or the intent and spirit of this chapter has occurred, it shall make a report to the governor, * * * who may remove forthwith such guilty officer, board, commission, head of department, or person.

{¶ 27} R.C. 124.56 authorizes the SPBR to investigate officials and to recommend the removal of officials who abuse their powers in violation of R.C. Chapter 124. But it does not confer any substantive rights on employees or impose any enforceable duties on employers apart from the rights and duties established elsewhere in R.C. Chapter 124. We have previously acknowledged that R.C. 124.56 "says nothing about an adjudication of individual employee rights" and

10

offers no relief to the employee aside from the investigation and removal of the offending official. *State ex rel. Carver v. Hull*, 70 Ohio St.3d 570, 575, 639 N.E.2d 1175 (1994). The statute provides a mechanism to enforce violations of R.C. 124.27 and the rest of R.C. Chapter 124. It does not express a clear public policy, apart from the General Assembly's already comprehensive scheme in R.C. Chapter 124, that would support recognizing a wrongful-termination tort claim.

{¶ 28} We therefore agree with the state that a *Greeley* tort remedy is not available on the basis of R.C. 124.27(B) or 124.56 and that the Court of Claims correctly dismissed Counts One and Two of Miracle's complaint. While the state's first proposition of law asserts more broadly that statutes concerning public employment generally should not support *Greeley* claims, we address only the statutes that Miracle invoked as the basis for his wrongful-discharge claims.

**The parties' remaining arguments**

*R.C. 9.86 immunity determination*

{¶ 29} Miracle's remaining claim asks for a determination from the Ohio Court of Claims that Jai Chabria, then a senior advisor to Governor John Kasich, is not entitled to immunity under R.C. 9.86 for his alleged role in directing Miracle's termination. R.C. 9.86 generally immunizes state officers and employees from personal liability for civil actions arising from the performance of their duties, "unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 9.86; *see also Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, 2006-Ohio-6208, 857 N.E.2d 573, ¶ 13.

{¶ 30} Under the plain language of R.C. 9.86, the Court of Claims has authority to decide immunity questions only in "any civil action that arises under the law of this state." *See Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992) (R.C. 9.86 applies only to state-law claims and not to federal claims);

11

*Cotten v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-240, 2018-Ohio-3392, ¶ 12 (same). Given our conclusion that Miracle failed to state any wrongful-discharge claim arising under state law, the Court of Claims has no basis upon which to conduct an immunity determination. Therefore, the Court of Claims correctly dismissed Count Four of Miracle's complaint.

*Greeley claims against nonemployers*

{¶ 31} Finally, the state argues that the court of appeals wrongly allowed Miracle to pursue his *Greeley* claims against the governor's office, an entity that was not his employer. Only the plaintiff's employer, the state asserts as its second proposition of law, is subject to a *Greeley* claim. Because we have concluded that Miracle has not stated a *Greeley* claim as a matter of law, we need not address here whether his complaint properly named the governor's office as a defendant.

**CONCLUSION**

{¶ 32} We conclude that R.C. 124.27(B) and 124.56 do not express a clear public policy that provides the basis for a wrongful-discharge claim for civil-service employees terminated during their probationary period. Accordingly, we reverse the judgment of the court of appeals and reinstate the trial court's order dismissing Miracle's complaint.

Judgment reversed
and trial-court order reinstated.

O'CONNOR, C.J., and DEWINE, J., concur.

FISCHER, J., concurs, with an opinion.

DONNELLY, J., concurs, with an opinion.

KENNEDY and STEWART, JJ., concur in judgment only.

_____

**FISCHER, J., concurring.**

{¶ 33} I join the majority opinion. I write separately to address any potential concerns regarding the court's rejection of appellee James Miracle's R.C.

124.56 wrongful-discharge claim by concluding that the claim fails on the clarity element.

**{¶ 34}** In its opinion, the Tenth District Court of Appeals focused on whether Miracle had satisfied the jeopardy element in regard to his R.C. 124.56 claim. 2018-Ohio-819, 108 N.E.3d 220, ¶ 13, 17. The court asserted that the state had conceded for purposes of its motion to dismiss that R.C. 124.56 expresses a clear public policy supporting Miracle's claim. *Id.* at ¶ 12 ("defendants admitted that R.C. 124.56 expressed a clear public policy 'prohibiting the abuse of power by "any officer, board, commission, head of a department, or person" who possesses the power to remove a civil service employee' ").

**{¶ 35}** The record in this case indicates, however, that the state made no such concession or admission. In its motion to dismiss, the state asserted that all of Miracle's claims for wrongful discharge in violation of public policy "fail at the very first element: identification of a public policy allegedly violated by his employer, the Department." Later in the motion, the state argued that even if R.C. 124.56 established a public policy, Miracle's claim would fail on the jeopardy element. Miracle acknowledged the state's position in his response to the state's motion to dismiss, in which he noted that "[d]efendants argue that ORC § 124.56, which prohibits the abuse of power by persons having the power to remove civil servants, does not provide a clear public policy sufficient to support Plaintiff's wrongful discharge claim."

**{¶ 36}** Further, in the state's brief before the Tenth District, it did not concede or admit that R.C. 124.56 expresses a clear public policy supporting Miracle's wrongful-discharge claim. Instead, the state argued that even if one were to assume that the statute expresses a clear public policy, the Court of Claims properly dismissed Miracle's claim because he had failed to satisfy the jeopardy element. Thus, the state never did concede or admit that that Miracle had established a clear public policy as to R.C. 124.56 in support of his claim.

**{¶ 37}** Miracle argues in his brief here that because the state conceded that R.C. 124.56 articulates a clear public policy, the clarity element in regard to that claim is not at issue in this appeal. The state, however, never made any concession, and, in fact, it has argued in both its memorandum in support of jurisdiction and in its merit brief that Miracle had failed to satisfy the clarity element.

**{¶ 38}** Thus, because the state never conceded or admitted that Miracle satisfied the clarity element as to his R.C. 124.56 claim and because this issue has been raised and briefed in this appeal, the majority opinion properly disposes of Miracle's R.C. 124.56 wrongful-discharge claim by determining that he failed to show that the statute expresses a clear public policy.

_____

**DONNELLY, J., concurring.**

**{¶ 39}** I join the majority opinion, including its holding that the particular statutes at issue here—R.C. 124.27(B) and 124.56—do not directly express a public policy that supports appellee James Miracle's wrongful-discharge claim pursuant to *Greeley v. Miami Valley Maintenance Contrs., Inc*., 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). I write separately to stress that our decision today does not reach the state's sweeping assertion that *Greeley* is generally inapplicable to any and all statutes related to public employment. Therefore, I believe that the majority opinion should not be read as foreclosing the possibility that a probationary public employee could pursue a wrongful-discharge tort claim based on an employer's violation of some other statute contained in the scheme governing public employment.

_____

Adams & Liming, L.L.C., and Sharon Cason-Adams, for appellee.

Dave Yost, Ohio Attorney General, Benjamin M. Flowers, Deputy Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Lee Ann Rabe, Assistant Attorney General, for appellants.

14

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae Ohio Employment Lawyers Association.

Willis Spangler Starling and Jason E. Starling, urging affirmance for amicus curiae Ohio Association for Justice.

_____